CORNELL-ANDREWS SMELTING COMPANY *vs.* BOSTON AND PROVIDENCE RAILROAD CORPORATION.

Bristol. March 15, 1909. — June 24, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Practice, Civil,* Conduct of trial, Challenging jurors. *Landlord and Tenant,* Construction of lease. *Contract. Way,* Private, Of necessity. *Grade Crossing. Damages,* For property taken or injured under statutory authority, Mitigation.

Where the owner of certain real estate, which has been damaged in the course of the abolition of a grade crossing of a railroad with a town way, and one who occupies it under a lease from the owner severally bring against the railroad company petitions for an assessment of the damages which they have sustained, and, under R. L. c. 48, §§ 20, 23, the cases are tried together, each party, under R. L. c. 176, § 29, is privileged to challenge four jurors without assigning any cause.

Where, by the provisions of a lease in writing, the lessor grants to the lessee " a right of way of at least twelve feet in width from the northerly line of said lot [described in the lease] to the cart path . . . and to a point on said cart path within two hundred feet at least from " land of an adjoining owner, " together with a right of way over said cart path or equally convenient way . . . to M. Street," and the lessee, with the acquiescence of the lessor, adopts and uses a way within the location mentioned, a definite assignment of the way is effected; and if, in accordance with a decree made in grade crossing proceedings under

R. L. c. 111, §§ 149–152, as amended by Sts. 1902, c. 440, § 3; 1905, c. 408, § 2, a new street is constructed upon an embankment which lies between the cart path and the land leased and is elevated from twenty-four to thirty-eight feet beside such land, the private way thus established is discontinued and extinguished.

Where, in a lease of a parcel of real estate, which is in one corner of a large tract owned by the lessor, the lessor grants to the lessee a right of way from the land described to a certain cart path " together with a right of way over said cart path or other equally convenient way " to certain points at the termini of the cart path, and, under authority of a decree abolishing a grade crossing of a railroad with such cart path, a new street is constructed upon an embankment which lies between the cart path and the land leased and rises from twenty-four to thirty-eight feet above them, the lessor cannot be compelled to assign to the lessee another convenient way connecting the leased premises with the points beyond the termini of the cart path, nor is a way of necessity created for the lessee by such acts of eminent domain occurring after the execution of the lease.

Where the owner of a large tract of land leases for a term of ten years a portion of it to a manufacturing corporation, together with a right of way connecting the leased premises with a cart path on the land of the lessor not included in the lease, which leads to public streets, and the lessee thereupon places upon the land leased a building containing fixed machinery, and subsequently, in accordance with proceedings for the abolition of a grade crossing of a railroad with a way, which were begun after the lessee had so built upon the land, a new way, extinguishing the way given to the lessee by the terms of the lease, is constructed upon an embankment which lies between the cart path and the premises leased and rises from twenty-four to thirty-eight feet above them, and both the lessee and the lessor severally petition for an assessment of their damages, the jury should be instructed to assess separately the damages to the leasehold and those to the reversion; and the lessee in its suit can recover the difference between the fair market value of the leasehold, including the improvements, as it was on the date of the decree and such value as it had after the construction of the crossing and the new street, as well as any special and peculiar damages which it sustained by the property's being made inaccessible for the carrying on of business during the progress of the work and by the machinery being injured by dust caused by the construction work.

In assessing damages suffered by a lessee of real estate by the abolition of a grade crossing of a railroad with a way, a provision in the lease giving to the lessee a right at any time during its term of ten years to purchase the premises leased at their fair value should not be taken into consideration either to enhance or to diminish the lessee's claim.

In assessing damages suffered by a lessee of real estate because of the extinguishment, in the abolishing of a grade crossing of a railroad with a way, of a private way granted to him from the leased premises to a cart path on remaining premises of the lessor leading to public streets by the building across it and between the leased premises and the cart path of a new street upon an embankment which rises from twenty-four to thirty-eight feet above them, the jury should give consideration to the question, whether, by the construction of suitable approaches at the former position of the private way granted to him, the new street could not have been used for all reasonable and necessary purposes of transportation or of travel during the remainder of the term of the lease.

By the provisions of a lease of land, the lessor granted to the lessee for a term of ten years a portion of a large tract owned by him and a right of way from the

leased premises to a cart path on the premises which he retained, which led in both ways to public streets. In the course of the abolition of a grade crossing of a railroad with a way, a new street was constructed upon an embankment between and from twenty-four to thirty-eight feet above the premises leased and the cart path, entirely extinguishing the private way given in the lease. This new street was parallel to the cart path, but came to a dead end on the lessor's land. At the trial of a petition by the lessee for an assessment of damages suffered by him in the construction of the work of abolition, the presiding judge charged the jury that they might take into consideration the possibility or probability of the town's continuing a public street to the dead end of the street so left, and thus connecting the new street with the streets to which the cart path ran. *Held*, that the instruction was incorrect since it failed to direct the jury's attention to the fact that, unless the petitioner had some means of access to the new street, the extension of the new street to other streets of the town was of no benefit to him.

By the provisions of a lease of land, the lessor granted to the lessee for a term of ten years a portion of a large tract owned by him and a right of way from the leased premises to a cart path on the premises which he retained, which led in both ways to public streets. In the course of the abolition of a grade crossing of a railroad with a way, a new street was constructed upon an embankment between and from twenty-four to thirty-eight feet above the premises leased and the cart path, entirely extinguishing the private way given in the lease. This new street was parallel to the cart path, but came to a dead end on the lessor's land. Evidence was admitted on behalf of the respondent at the trial of a petition by the lessee for an assessment of damages suffered by him in the construction of the work of abolition, tending to show that the lessee had made no attempt to secure from the lessor a new right of way through the lessor's land to connect with the new street at a different point than the place where the former right of way existed. Under the lease the lessor could not be compelled to assign such right of way. *Held*, that the evidence wrongly was admitted.

A lessee of real estate, who has erected upon the leased premises a factory with machinery, some of which is fixed and some movable, and who, by the extinguishment, in the course of the abolition of a grade crossing of a railroad with a way, of a private way given him in his lease, is prevented from using his factory or moving the movable machinery, in a petition seeking the assessment of the damages suffered by such work, under R. L. c. 111, §§ 149–152, as amended by Sts. 1902, c. 440; 1905, c. 408, cannot recover for consequent decrease in the value of the movable tools, either directly, or indirectly by proof of its value in connection with the fixed machinery.

The damages suffered by one, who occupies land under a lease in accordance with the provisions of which he had been assigned a right of way which gave him access to a private way connecting with the public streets of a town, which right of way has been extinguished by the construction, in the course of the abolition of a grade crossing of a railroad with the private way, of a new street over it, built to take the place of the former private way, which damages, under R. L. c. 111, § 153, Sts. 1902, c. 440, § 3; 1905, c. 408, § 2, are to be assessed against the railroad company, are the entire damages suffered by the petitioner, not only those suffered within the railroad location.

PETITION, filed on March 19, 1906, for damages resulting to the petitioner from the discontinuance of a private way called

Maple Street in Attleborough in the process of the abolition of a grade crossing of the respondent.

The case was tried before *Hardy*, J., together with another case by the same petitioner against the town of Attleborough, and six cases by Clarence L. Watson against this defendant and the town. It appeared that the petitioner was the lessee of premises shown on the accompanying plan from Clarence L. Watson. The term of the lease was ten years from April 2, 1900, and it was duly recorded. It contained a provision that the lessee or its successors or assigns should " have the right and option at any time during the continuation of this lease, to purchase said tract of land together with said rights of way," the price either to be agreed upon by the parties or to be determined by referees.

The provisions of the lease with regard to rights of way followed immediately after the description of the land leased and were as follows: " Together with a right of way of at least twelve feet in width from the northerly line of said lot to the cart path, which runs over said other land of said Watson about one hundred and fifty feet north of said northerly line of said tract, and to a point on said cart path within two hundred feet at least from said railroad land, and together with a right of way over said cart path or other equally convenient way to said river and across the same, and a right of way in continuation over land now or formerly of John W. and Oscar Wolfenden to County Street, the same as granted to said Watson and Fred A. Newell by deed from Richard D. Manchester, . . . or as otherwise possessed by said Watson or as appurtenant to said lands of said Watson or any part thereof. And together with a right of way over said cart path or equally convenient way across said railroad land to Maple street, the same as granted by said deed from said Manchester or as otherwise possessed by said Watson or as appurtenant to said lands of said Watson or any part thereof. Such rights of way to run with said land herein demised as appurtenant thereto, for use by travellers on foot, and with teams and vehicles of any description, but not to be exclusive, nor shall the rights of way herein demised prevent the said lessor, his heirs or assigns from demising or granting the same rights of way to the lessees or assigns of other parts of said lands of said Watson."

The "cart path," referred to in the above quoted portion of the lease and in the opinion, is marked "roadway" on the accompanying plan. Such "roadway," and the "private way dis-

continued" and the "private way," shown on the plan, formed Maple Street. The right of way provided for the petitioner in his lease is marked on the plan "Location of Petitioner's Right of Way before Construction of Olive Street." About six hundred feet from where Maple Street crossed Ten Mile River it joined with County Street, a town way. About four hundred feet from where it crossed the railroad it ran into South Main Street. Both County Street and South Main Street were parallel to the railroad. The only connection that the large tract of land shown on the plan had with the streets of the town was by means of Maple Street.

The final report of the commissioners appointed by the Superior Court in the proceedings for the abolition of the grade crossing, which was confirmed on July 2, 1904, determined that the Maple Street crossing should be abolished and Maple Street at that point discontinued, that a new crossing should be made and a new street called Olive Street Extension, crossing the railroad at an elevation, should be constructed as shown on the plan. Such construction discontinued entirely the petitioner's right of way. Nearest the railroad, Olive Street Extension was thirty-eight and one half feet above the land occupied by the petitioner.

Opposite the northwest corner of that land it was elevated twenty-four and one half feet.

The actual entry to begin the work in accordance with the decree of abolition was made on the petitioner's premises in February, 1906. Inside of two weeks after this work was begun, access to the petitioner's lot was practically closed, but the plant was running until early in July, 1906. Olive Street Extension was not opened to travel until September, 1907, and at that time a new way constructed by the town from the end of Olive Street Extension across Ten Mile River to County Street was opened.

At the close of the evidence, the petitioner requested the presiding judge to make the following rulings, which were refused:

" 1. The petitioner is entitled to damages for the diminution in the market value of the petitioner's interest in the real estate.

" 2. The jury in assessing damages may consider any loss to this petitioner's interest in the real estate arising from any of the following conditions, so far as it is found to exist: loss of opportunity to use spur track; lack of adaptability for manufacturing purposes; existence of embankment on the north and east side of the petitioner's property. . . .

" 6 b. There is no evidence that at the time as of which the damages are to be assessed there was any probability that the Town of Attleborough would lay out a street in continuation of Olive Street Extension.

" 6 c. The jury cannot consider any probability there may have been at the time as of which the damages are assessed that the Town of Attleborough would lay out a street in continuation of Olive Street Extension.

" 7 a. Under the decree Olive Street Extension destroyed this petitioner's right of way to the north of Olive Street Extension.

" 7 b. The jury may find that the construction of the Olive Street Extension under the decree destroyed the plaintiff's right of way to the north of Olive Street Extension.

" 7 c. If the jury find that the lessor and the lessee either expressly or impliedly agreed upon the location of the twelve-foot way from the north line of the lessee's land to the cart path, then the location was fixed and neither of the parties had the right to change the location. . . .

" 7 e. After the layout and construction of Olive Street Ex-

tension the lessee had no right to alter the surface of the way on the lessor's land except for the ordinary repair of the way and could not construct an embankment on the lessor's land so as to reach the slope and street.

"7 f. The lessor was not bound to give a temporary way around the south side of Olive Street Extension to the lessee during the construction of the work.

"7 g. The lessor was not bound to give to the lessee a right of way along the lessor's land on the south side of Olive Street Extension up to the surface of Olive Street Extension.

"7 h. The words in the lease 'or other equally convenient way' do not mean a way equally convenient with the twelve-foot way from the north line of this petitioner's premises.

"7 i. The words in the lease 'or equally convenient way' do not mean a way equally convenient with the twelve-foot way from the north line of this petitioner's premises.

"7 j. This petitioner was not bound to ask the lessor for a convenient way out of its premises during the construction of the work.

"7 k. This petitioner was not bound to ask the lessor for a way out of its premises after the completion of the work.

"7 l. If the jury find that the lessor and the lessee either expressly or impliedly agreed that the cart path should be the way to the track and the way towards County Street, then the location of those ways was fixed and neither party had the right to change the location. . . .

"9. If the jury find that this petitioner had in its building machinery not fixtures, but necessary in working and using the machinery affixed to the land, the jury may consider the value of the said machinery which was not affixed, in determining the damage to the petitioner, if any, from loss of access to the streets of the town while the work under the decree was carried on."

Among other rulings, which the petitioner requested the presiding judge to make and which the bill of exceptions states "were given or no exception was taken to the refusal to give them," was the following: "10. In apportioning the damages between this petitioner and Mr. Watson the jury will give to this petitioner the diminution in the market value of its lease and the diminution in value of its buildings and fixtures."

The presiding judge charged the jury in part as follows:

"By reason of the decree of the commission it is my duty to rule that, so far as the private rights of Mr. Watson were concerned in the way called Maple Street from the railroad location to the bridge over towards the Wolfenden property, his rights in that private way were not abolished. The rights of Mr. Wolfenden were not abolished so far as you find that they may exist from the deed. The rights of the Cornell-Andrews Company in that Maple Street Extension west of the railroad location were not discontinued so far as the company had any private right in that Maple Street Extension. The right that the Cornell-Andrews Corporation had in the way extending from the northerly line of the leased property to the cart path called Maple Street was not discontinued by that decree. So far as they had any private rights in that property previously to this decree of the commissioners those private rights still continue. . . .

"Now, perhaps I might as well deal with the question of what is called the dead-end here in this new way taken by the decree of July 2, 1904. . . . In connection with the taking of such land and in connection with the injury to the remaining land because of such taking, you are to take it as if that way were established for all time, so far as the taking was concerned. So far as the taking is concerned, you are not at liberty to take into consideration the probability that there would in the future be a further taking by the public authorities for the extension of that way over the river to County Street. . . .

"There was considerable evidence introduced about the value of this plant [of the Cornell-Andrews Smelting Company]. These petitions are maintained for damages to the real estate, not for damages that may have been incurred by the parties because some contract was interfered with or because the business was interfered with as business. The statute does not imply that business losses are to be considered by you so far as the interference with the use of personal property is concerned or so far as the interference with certain contracts is concerned. . . . The question here is, What was the injury to the use and occupation of that realty, or that property attached to the realty, because of interference with its rights of access? And that applies

not only to the suit against the Providence Railroad Company but also the rights against the town of Attleborough.

" Now, in dealing with the question of the attachments to the real estate, I do not know that I need to spend much time upon that. The matter of option may be of some importance as showing what was the intention of the parties when this machinery was attached to the realty. Was it the intention of both parties that it should be made a part of the realty ? An option attached to the lease may be of importance to show that there was an intention on the part of the lessee when he had put it there perhaps to buy at the end of the term upon an agreed sum and it would become a part of the realty, that the sum that he paid perhaps would be less because of the attachments that he had made to the realty. That may be considered by you as bearing upon the question of intention. Did it become a fixture because there was an intention on the part of the lessee to remain there for a long time, to use the property, perhaps to buy it ? But so far as an option attached to the lease is concerned with reference to any interference with that as a matter of damages or a claim for damages, you have no right to consider that as bearing upon the amount of damages that ought to be recovered in this case, because the interference with contracts between the parties is not to be considered, the interference with the personal property is not to be considered ; that is excluded from your consideration. It is only the question of the value of the use and occupation, and the impairment of the value of that use and occupation by reason of any interference with such use and occupation. . . .

" As I have already said, that decree of July 2, 1904, abolishing the private crossing over the railroad location, did not extinguish the rights of the Cornell-Andrews Company to the private way that existed from the northern boundary of its land to the old way called Maple Street, called the cart path in the lease. It did not abolish it. Up to the time that there was an entry upon the land by the town for the purpose of constructing a new way, it had the same right to use that way that it had before. Now in establishing the way over the premises, over this private right of way, the company still had the right to approach the public street that way provided it could do so by adapting that way to the new grade of the street, and when its officers or agents ar-

rived upon the surface of the new way, it had the right to cross it and had the right to pass off the new way over the limits of the old way to the cart path or Maple Street. I rule that as a matter of law, because I have already explained to you that where a public way is established over land, the fee still remains in the owner, and if there is a private right of way, the right of way still exists for the purpose of approach to the limits of the public way, and you have the right to consider in the light of that law what interference there was with the accessibility to the old cart path at that time and what could have been done in connection with the approach to the new way. . . .

"We are dealing here with the contract, a contract in the form of a lease, and as I view that contract it appears to me the proper construction is that there was an alternative right here to be considered by the jury as well as by the parties themselves in connection with the right of way. That is, if there was an inter-ference on the part of Mr. Watson in connection with that use of the way, if he desired to change it in the future, [he agreed in the lease] that he would afford an equally convenient right of way for the Cornell-Andrews Company to the outer world, the Wolfenden bridge; that he would afford it either way, that is, on the way to the crossing and on the way to the Wolfenden bridge; and it is my duty, I think, to instruct you as a matter of law that under this interference that may have existed here with the rights of access to the Cornell-Andrews Company, that the company would have the right to call upon Mr. Watson to afford an equally convenient way by which access could have been obtained to outside property, and it is for you to say as a question of fact what would be an equally convenient right of way. If you find that there was no convenient right of way that could be obtained in accordance with my instructions, then that leaves the petitioner, the Cornell-Andrews Company, in a con-dition to approach you and ask you what would be the damages under those circumstances, what would be fair and reasonable compensation for the loss of the use and occupation because that way could not be obtained. . . . Now if you find upon all the evidence in this case that that reasonably convenient way could be afforded the Cornell-Andrews Company, it is my duty to in-struct you that Mr. Watson under the contract would be obliged

to grant it, and under the contract it would be the duty of the petitioner, the Cornell-Andrews Company, to apply for it. . . ."

In one of the petitions by Watson against the Town of Attleborough, and in one of his petitions against the defendant in this case the jury found for the petitioner, and verdicts were directed for the respondents in the remaining four petitions brought by him.

In the petition of *Cornell-Andrews Smelting Company* v. *Town of Attleborough*, the jury returned a verdict for the petitioner for $5,842.72, which verdict was set aside by the presiding judge.

In this case, the jury found for the petitioner in the sum of $583.47 ; and the petitioner alleged exceptions.

*J. W. Cummings*, (*C. R. Cummings* with him,) for the petitioner.

*J. L. Hall*, for the respondent.

BRALEY, J. The petitioner, which held a lease of a part of the premises, and the landowner having severally brought suits against the respondent and the town to recover damages caused to their respective estates by the discontinuance of a private way at a grade crossing and by the taking of land for a public way, laid out and built pursuant to the decree, the cases were tried together in accordance with the provisions of R. L. c. 48, §§ 20, 23. The joinder for the convenience of trial, however, having worked no change in the statutory liability of the respondents, which remained several and not joint, each party was privileged under R. L. c. 176, § 29, to challenge four jurors without assigning any cause. *Stone* v. *Segur*, 11 Allen, 568, 570.

If a reference to the evidence, rulings and instructions in the other cases is necessarily contained in the exceptions, the only remaining questions before us relate to the petitioner's title and the measure of damages recoverable against the railroad corporation.

The petitioner's estate having consisted of the land described in the lease, with the rights of way referred to as appurtenant, it becomes important to ascertain the location of the passageway leading from the demised premises to the cart path. The cart path, with the connecting way on the west, being in existence at the date of the lease, is referred to without further description, but the passageway providing the only roadway from the leased

premises is described as starting from the northerly line of the lot with a width at least of twelve feet, and thence running over other land of the lessor to the cart path about one hundred and fifty feet distant, which it was to join at a point within two hundred feet from land of the railroad abutting on the east. The termini and maximum width having been fixed, with the choice conferred on the lessee of determining at what point within the two hundred feet the passageway should take its departure, the subsequent location by user, in which the jury could find the lessor had acquiesced, operated as a definite assignment from which without his consent there could be no deviation. *George* v. *Cox,* 114 Mass. 382. *Stetson* v. *Curtis,* 119 Mass. 266. *Lipsky* v. *Heller,* 199 Mass. 310, 318. *Bass* v. *Edwards,* 126 Mass. 445.

In the enjoyment of the leasehold, after reaching the cart path the petitioner could proceed to a highway either on the west by crossing the bridge over the river as the most convenient route, or on the east over the railroad at grade.

It was within the authority of the commissioners to prescribe what alterations were necessary to do away with the crossing, and their decree is declared by the statute to constitute a taking of whatever land or other property they decide may be required to carry out the changes. R. L. c. 111, § 152, as amended by the Sts. of 1902, c. 440, § 3.* By the scope of the decree a permanent public easement in the entire area within the defined layout of the street with the accompanying slopes was taken. *Doon* v. *Natick,* 171 Mass. 228. But if the fee remained in the lessor, the passageway, or outlet, being within the metes and bounds, even if not specifically named, was discontinued and extinguished when the work had been entered upon. *Central Wharf* v. *India Wharf,* 123 Mass. 567, 570. *Googins* v. *Boston & Albany Railroad,* 155 Mass. 505. *Doon* v. *Natick,* 171 Mass. 228. *Scholefield* v. *Boston & Maine Railroad,* 173 Mass. 387, 390. *Lancy* v. *Boston,* 186 Mass. 128, 133. The street as constructed having rendered the use of the same level in transit impossible by the extreme difference in grade, an essential element of the private easement had been destroyed, and there remained no concurrent use not incon-

---

* See also St. 1905, c. 408, § 2.

sistent with the rights of the public, which the petitioner might exercise, as in *Clark* v. *Worcester*, 125 Mass. 226, 231. See also *Denniston* v. *Clark*, 125 Mass. 216, 221; and *Como* v. *Worcester*, 177 Mass. 543.

After extinguishment of the way, the lessee possessed no enabling rights under the lease to require the lessor to assign another way connecting the leasehold with the cart path. The covenant to assign equally convenient ways refers to ways then in existence to which specific reference is made, and a way by necessity did not arise, even if the jury found that by the course of events the petitioner, having been left in a *cul de sac* with the opening closed, was for a period cut off from any available method of ingress and egress necessary for the commercial use of its estate. A way of this nature comes into existence at the time of a grant which has omitted to provide access to the estate conveyed. *Oliver* v. *Pitman*, 98 Mass. 46. *Morse* v. *Benson*, 151 Mass. 440. And it is only when a way is obstructed, or closed by the acts of the owner of the servient estate, that the owner of the dominant estate may depart from the located way and pass over other portions of the land. *Leonard* v. *Leonard*, 2 Allen, 543. Upon the establishment of the passageway the petitioner obtained an uninterrupted line of communication, which as between itself, the lessor, and the railroad corporation formed an indivisible easement. The leasehold accordingly should be considered as abutting on a continuous way, whose location was clearly defined, and could not be changed without a reassignment. *Killion* v. *Kelley*, 120 Mass. 47, 52.

The rulings requested and refused as to the scope of the petitioner's appurtenant rights and the effect of the decree, as well as the instructions to the jury to which the petitioner excepted, were erroneous.

Inasmuch as there must be a new trial at which the questions may again arise, we take up the exceptions to the rulings and instructions as to damages.

The eviction not having been caused by the acts of the lessor, there had been no breach of the covenant for quiet enjoyment, as the lessee's occupation of the premises was subject to the exercise of the right of eminent domain. *Weeks* v. *Grace*, 194 Mass. 296, 298. The lessee's remedy therefore is under the provisions

of R. L. c. 111, § 153, as amended by St. 1902, c. 440, § 2. The freehold and leasehold being incommensurate, and no part of the reversion having been taken, if as to this respondent damages in gross were awarded for injury to the entire tract caused by the closing of the cart path at the crossing, the apportionment to the lessee would not measure the damages suffered in the extinguishment of the passageway in which the lessor had no inherent interest. If to avoid this objection the course pursued at the trial is followed, and for the assessment of damages the freehold is treated as severable, even then the injury to the reversion does not differ in kind from the injury to the remaining land, as the lessor made no claim that the buildings and fixed machinery formed a part of his estate. The rule of apportionment under R. L. c. 48, § 20, where there are leasehold interests, even if held applicable in *Providence, Fall River & Newport Steamboat Co.* v. *Fall River*, 187 Mass. 45, 50, to proceedings for the abolition of grade crossings, does not deprive a lessee from recovering compensation independently of the lessor, if a settlement has been made with him, or where the damages to the leasehold are distinct and separate from those suffered by the landowner. *Pegler* v. *Hyde Park*, 176 Mass. 101, 103. *Galeano* v. *Boston*, 195 Mass. 64. See *Harris* v. *Howes*, 75 Maine, 436.

But while the damages to the leasehold should have been assessed separately, no exceptions were taken to the instructions which seem to have been in conformity with the tenth request. By the verdict in his favor, however, which apparently has not been set aside, the lessor, having received compensation for injury to the reversion, has ceased to have any pecuniary interest in the present action, and no question of apportionment will arise at the second trial. It will then be open under the allegations in the petition for the petitioner to recover the difference between the fair market value of the leasehold, including the improvements, as of the date of the decree, and its value as left after the building of the street to its westerly end, with the elevation of the bed of the railroad at the easterly end, cutting off the use of the spur track. It also can recover any special and peculiar damages which have been sustained, so far as the property was rendered inaccessible for the carrying on of business during the progress of the work, together with any

injury affecting the use of the machinery, arising from the deposition of dust coming from the street while in process of construction. *Drury* v. *Midland Railroad*, 127 Mass. 571. *Lawrence* v. *Boston*, 119 Mass. 126. *Pennsylvania Railroad* v. *Ebry*, 107 Penn. St. 166. *Edmands* v. *Boston*, 108 Mass. 535. *New York, New Haven, & Hartford Railroad* v. *Blacker*, 178 Mass. 386. *Putnam* v. *Boston & Providence Railroad*, 182 Mass. 351. *Munn* v. *Boston*, 183 Mass. 421. *Sheehan* v. *Fall River*, 187 Mass. 356, 361. *Hyde* v. *Fall River*, 189 Mass. 439. *Galeano* v. *Boston*, 195 Mass. 64.

The value of the lessee's option of purchase, provided for in the lease, can neither enhance nor diminish the petitioner's claim, as damages are assessed for injury to its interest as of the date of the taking. *Pegler* v. *Hyde Park, ubi supra.*

In determining whether to an appreciable degree there had been any permanent depreciation, the jury should take into consideration whether, after completion at the westerly end as called for by the decree, the street, by the construction of suitable approaches at the passageway where it opened on the leasehold, could have been used for all reasonable and necessary purposes of transportation or of travel during the remainder of the term, and also whether a connection with the railroad was not still feasible.

While the ruling requested, that the probability of the town's laying out a continuation of the street could not be taken into consideration, was properly refused, and the jury correctly were instructed to consider whether the town ultimately would extend it across the river to the highway on the westerly side, their attention also should have been directed to the limitation, that unless the petitioner could reach the street by building an approach at the passageway, it would derive no benefit by the extension. *Como* v. *Worcester*, 177 Mass. 543. *Heald* v. *Kennard*, 180 Mass. 521, 523.

But neither during its construction at any stage, nor after completion did the lessee have the right to build an embankment or approach on the lessor's land, or to enter upon his premises to pass around the completed west end, either to gain access to the street or to reach the cart path. *Killion* v. *Kelley*, 120 Mass. 47, 52. Both were bound by the terms of the lease,

which as we have said conferred no alternative rights as to the passageway.

The petitioner undoubtedly was required to make use of every reasonable means to obtain access to the cart path or to the street, and damages could not be enhanced by its inactivity, but until some proof appeared that such an effort was practicable, a failure to make the attempt would not diminish damages actually suffered. The evidence that either of these methods could have been adopted, or that the lessor had not offered a way in substitution, was wrongly admitted.

The petitioner, while permitted to show the value of the fixed machinery, was not allowed to introduce evidence of the decreased value of the necessary movable tools and appliances used in its business. But under our decisions there could be no recovery for injury to this class of property, even if by closing the passageway its removal had been made practically impossible during the period of construction. Nor could this be accomplished indirectly by proof of its valuation in connection with the fixed machinery, to be used as an element of computation in determining the damage caused by loss of access. The exclusion of this evidence and the refusal to rule that its value in any form could be recovered was correct, and the instructions given were appropriate. *Edmands* v. *Boston*, 108 Mass. 535. *Sawyer* v. *Commonwealth*, 182 Mass. 245. *New York, New Haven, & Hartford Railroad* v. *Blacker*, 178 Mass. 386. *Bailey* v. *Boston & Providence Railroad*, 182 Mass. 537. *Boston Belting Co.* v. *Boston*, 183 Mass. 254.

It remains to determine whether the respondent is liable in the first instance for the petitioner's entire damages, or whether the damages are separable, to be assessed partly against the town and partly against the railroad. The crossing was a private way for which the street was built strictly in substitution, and the statute on which the decree rests makes provision for but one public work, without any distinction as to the relative importance of one part over another, in the adjustment necessarily required for the separation of grades. *Farwell* v. *Boston*, 180 Mass. 433. *Davis* v. *County Commissioners*, 153 Mass. 218, 227. The railroad is primarily to pay for all damages " which may be sustained by any person in his property," where

the discontinuance is of a private way. R. L. c. 111, § 153. St. 1902, c. 440, § 3. St. 1905, c. 408, § 2. If the railroad is to be held responsible only for the discontinuance of the portion within its location, the injury is the same in kind, even if the damages must differ in amount, from those caused by the extinguishment of that portion of the way within the limits of the street. It is obvious that, when the passageway affording the only available means of entrance and exit had been extinguished, the petitioner would not have suffered any larger injury if the street had been laid out wholly within the confines of the cart path, for the discontinuance of which the respondent would then have been answerable. But in estimating damages the same result follows for, upon the appropriation of a part at each end leaving the intervening portion inaccessible, a complete discontinuance of the whole of the way from the northerly line of the leasehold had been worked. *Webster* v. *Lowell,* 142 Mass. 324, 338.

We are of opinion that the instructions which in substance restricted the liability of the respondent to the discontinuance of the portion of the cart path at the crossing were incorrect, and the jury should have been instructed that the petitioner's entire damages were to be assessed against the railroad corporation, with interest from the time when possession was taken for the purposes of construction. R. L. c. 48, § 13.

*Exceptions sustained.*