CORNELL-ANDREWS SMELTING COMPANY *vs.* BOSTON AND PROVI-
DENCE RAILROAD CORPORATION, CLARENCE L. WATSON,
intervening petitioner.

Bristol.   March 5, 6, 1913. — June 21, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DE COURCY, JJ.

*Practice, Civil,* Exceptions, Conduct of trial: requests, rulings and instructions,
New trial. *Way,* Private. *Deed,* Construction. *Damages,* For property
taken or injured under statutory authority. *Corporation,* Foreign. *Evidence,*
Opinion: experts, Of value, Relevancy and materiality, Competency.

In a bill of exceptions testimony should not be set forth at length by question and
answer when its substance can be stated in a narrative form.

The setting forth of exceptions to the manner in which a trial judge dealt with re-
quests of various parties for rulings, by stating all of the requests at length
without stating which were refused and which were granted and leaving this
court to learn how the requests were dealt with from an examination of the
charge to the jury and of colloquies between the judge and the counsel for the
various parties, which also are set out in full, is a course which cannot be too
strongly condemned.   By SHELDON, J.

Where the owner of land used exclusively for agricultural purposes conveys a part
of it by a deed containing a provision reserving "a right of open way" from the
remainder of the land through the portion conveyed to a street, a subsequent
grantee of the remainder of the land may use such way not only for agricultural
purposes but also for any changed use to which it reasonably may be put in
connection with the use of his land.

Where a deed to a railroad corporation of a part of a farm contains a stipulation
for a "passway" for the benefit of the grantor "over" the railroad "for farm-
ing purposes," a successor in title to the grantor has no right of way over the
land so conveyed for any other than farm purposes.

At the trial of a petition by a lessee of land against a railroad corporation for dam-
ages resulting from the abolition of a grade crossing of a private way with the
railroad, where the lessor of the land has been admitted as an intervening
petitioner, the railroad corporation, against whom the entire damages are to
be assessed, has no right to raise the question, whether the damages shall be
assessed and paid to a trustee according to the provisions of R. L. c. 48, §§ 17,
18, or shall be apportioned by the jury and paid to the various parties inter-
ested in accordance with §§ 20–24 of that chapter.

At the trial of a petition by a lessee of land for damages resulting to him from
the abolition of a grade crossing with a private way in the course of which an-
other private way, which was the petitioner's only means of going to and from
the leased premises, was discontinued by the construction across it of a new
street at an elevation, the petitioner claimed damages resulting from the fact
that by such construction buildings and machinery, which he had placed upon
the premises, and his lease were greatly reduced in value or rendered worth-

less, and he was *held* not to be limited in his damages to what it would cost to buy land to construct another way, or to the cost of building a way out of his premises, although those were circumstances to be considered in assessing damages.

At the trial of a petition by a foreign manufacturing corporation for damages resulting to it from the abolition of a grade crossing with a private way in the course of which another private way, which the petitioner contended was the only means of going to and from its premises, was discontinued by the construction across it of a new street at an elevation, the judge, subject to an exception by the respondent, instructed the jury that the foreign corporation was not an inhabitant of the town where its factory was and had no right to petition the selectmen of the town under R. L. c. 48, § 65, for a new private way, and immediately added that it could make such an application to the county commissioners, who had power to deal with it, and fairly left it to the jury to say how far the value of the property and the amount of the damages to be assessed were affected by the possibility of such a way being laid out and constructed. *Held*, that, if the first ruling had stood alone, it might have been difficult to sustain, but that, in view of the other rulings, the exception must be overruled because the respondent was not harmed thereby.

Upon a petition against a railroad corporation by a foreign manufacturing corporation for damages sustained by the petitioner as lessee of certain land by reason of changes made in the abolition of a grade crossing of the railroad with a private way, it is immaterial that, at the time when the petitioner received its lease, it had not complied with the statutes requiring it to file with the commissioner of corporations, among other documents, an appointment of him as its agent for receipt of service, if it appears that it had complied with such statutes before the decree of court ordering the abolition of the crossing.

At the trial of a petition for damages resulting from the abolition of a grade crossing of a railroad and a private way, where the value of certain buildings is an issue, an experienced builder who constructed the buildings may be permitted in the discretion of the judge to testify as an expert as to their value at the time of their erection and at the time of the decree of court abolishing the crossing, which was four years later, although he is not acquainted with the value of real estate in the town where they are situated.

Where, at the trial of a petition against a railroad corporation by a manufacturing corporation for damages resulting from the abolition of a grade crossing of the railroad with a way, the petitioner at the request of the respondent has produced its books and they have been examined by an expert in behalf of the respondent, one who was the secretary of the petitioner during the period covered by the books may be allowed to testify as to their contents.

At the trial of a petition against a railroad corporation, by a corporation engaged in rolling, smelting and refining, for the assessment of damages caused by the discontinuance, in the course of operations in connection with the abolition of a grade crossing of the railroad with a way, of a private way which, the petitioner contended, was the only means of going to and from the petitioner's premises, it appeared that the petitioner's factory was upon land which it held under a lease, and the petitioner contended and offered evidence tending to show that, by the discontinuance of the way in question, operation of its plant was rendered impossible and its machinery and buildings were rendered worthless. Expert witnesses, testifying in its behalf, were asked, and, subject to exceptions

by the respondent, were permitted to answer questions relating to the existence or non-existence of other factories in New England engaged in rolling, smelting and refining. *Held,* that the testimony was neither incompetent nor prejudicial to the respondent.

Upon a petition against a railroad corporation by a lessee of land for the assessment of damages resulting from the abolition of a grade crossing of the railroad with a way, where it appears that in connection with such abolition a street was constructed at an elevation near the petitioner's factory, the petitioner may be allowed to show, as bearing upon the alleged decrease in the value of the real estate which it held under lease, that dust and dirt came into the factory from such new street after it was completed.

At the trial of a petition for the assessment of damages resulting from the abolition of a grade crossing of a railroad with a way, where the petitioner is a, manufacturing corporation which occupies with its factory certain land, access to which, it contends, was so effectually cut off by operations in connection with the abolition of the crossing that its factory and machinery and lease were rendered worthless, the petitioner may show that, previous to the changes made in the course of such abolition, the property was insurable, and that after the changes it was not insurable.

The rules for the assessment of damages, which were declared in *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 202 Mass. 585, and 209 Mass. 298, to be proper to apply in that case, here were reaffirmed on exceptions taken by the respondent and an intervening petitioner at a new trial of the case.

Certain land was leased to a manufacturing corporation for a term of years, the lease contemplating that the lessee should erect buildings on the land in which it should install machinery and other valuable trade fixtures, some of which it would have a right to remove, and that it should have a right of way across other land of the lessor to another private way, which ran beyond the lessor's land in both directions and which it also was given a right to use. In connection with the construction of a new street in the abolition of a grade crossing of a railroad with the second private way, the first private way was discontinued and the corporation's use of the second way thereby was cut off. Upon a petition by the corporation against the railroad corporation for the assessment of the damages thereby sustained, the lessor became an intervening petitioner, and it was *held,* that the proceedings properly were under R. L. c. 48, §§ 20-24, and not under §§ 17, 18, of that chapter.

*Whether,* in ruling upon a motion by a defendant, after a verdict for the plaintiff, asking for a new trial on the grounds that the verdict was against the evidence, the weight of evidence and the law, and that the damages were excessive, it is proper for the trial judge to make an order that the motion shall be allowed, "provided" that the defendant files a waiver in writing of exceptions taken by him at the trial, the motion to be denied if no such waiver is filed, here was not determined, a new trial being ordered by this court on other grounds.

PETITION, filed on March 19, 1906, by a Rhode Island corporation for damages caused in the course of the abolition under a decree of the Superior Court dated July 2, 1904, of a grade crossing of a private way in Attleborough called Maple Street and the respondent's railroad.

The case previously had been before this court twice, the former decisions being reported in 202 Mass. 585 and 209 Mass. 298.

The case again was tried in the Superior Court before *Ratigan*, J.

The petitioner occupied for manufacturing purposes, under a lease from one Clarence L. Watson, a portion of a large tract of land belonging to Watson, the terms of the lease giving it a private right of way running northerly and southerly between the leased premises and another private way, Maple Street, which ran easterly and westerly through the remainder of Watson's land, and, beyond Watson's land, on the east crossed the defendant's railroad and ran to South Main Street and on the west crossed Ten Mile River and ran to County Street. In the abolition of the crossing, Olive Street Extension was constructed at an elevation across the private way granted in the petitioner's lease. The petitioner contended that thereby it effectually was cut off from all use of Maple Street and the streets beyond.

The extent of the petitioner's right to use Maple Street was in issue. The respondent contended and asked rulings substantially to the effect that the petitioner had suffered no damage with respect to any right to cross the railroad tracks, and that Watson had no right to use Maple Street beyond his land toward County Street for other than farming purposes. The petitioner contended that it had a right to use the way in both directions for all purposes. The judge at first ruled that the petitioner's right to cross the railroad was for farming purposes only. Later he refused to give all of the rulings asked for by the respondent as to any limitation of the petitioner's rights to the use of Maple Street, and, as stated in the opinion, read a portion of the opinion of this court reported in 202 Mass. at pages 595, 596, 597. The respondent excepted to the failure to give the rulings it requested.

It appeared in evidence at the trial that at the time of the delivery of the lease by Watson to the petitioner, April 2, 1900, the petitioner had not complied with the provisions of the statutes as to foreign corporations doing business within this Commonwealth. It did so comply, however, on April 1, 1901. On this question the respondent, in requests numbered nine and ten, asked for rulings to the effect that the "failure on the part of the petitioner to comply with the laws of this Commonwealth relating

to foreign corporations, the laws of 1884, c. 330, and acts amendatory thereof, and with the laws of 1895, c. 157, and acts amendatory thereof, prevented it from acquiring an interest in the property as a tenant for ten years;" and that thereby " the petitioner was prevented from acquiring, at the time the building was erected and the machinery affixed as trade fixtures and at any later time, the right to remove the building and the said machinery." The judge refused to give such rulings, but ruled, in accordance with a request by the petitioner, that it was "not material in this case whether the petitioner did or did not file the appointment of agent to accept service with the commissioner of corporations before it began putting up the buildings."

The witness Hartwell, referred to in the opinion, testified that the petitioner's buildings were worth $7,800 in 1900, when he built them, and $9,300 in 1904, the date of the decree abolishing the crossing.

The witness Andrews, referred to in the opinion, was one Frank H. Andrews, who was secretary of the petitioner from the time of its organization until June, 1906. The books of the petitioner which, as stated in the opinion, at the request of the respondent were produced by the petitioner for examination by an expert employed by the respondent, included only books in use by the petitioner during the time that Andrews was its secretary.

In admitting the first expert testimony offered "about the existence or non-existence of other factories in New England engaged in rolling, smelting and refining," referred to in the opinion, the judge stated: "I suppose [the petitioner's counsel] is laying the foundation for something he may want further on. I should permit him to go into it. Whether or not the other question would be admissible is a matter I don't rule on at the present." Similar questions afterwards were asked of another expert witness, and the judge, subject to an exception by the respondent, permitted them to be answered, making no comment when he stated his ruling. No motion to strike out such evidence was made by the respondent at any time.

A witness, who qualified as an expert in insurance matters and as familiar with the petitioner's property, testified, subject to an exception by the respondent, that, while, before the changes incident to the abolition of the grade crossing were made, the prop-

erty of the petitioner was insurable, after those changes it was not insurable even at a high rate.

The twenty-second ruling requested by the respondent and referred to in the opinion, was as follows: " If the jury find that the only damages suffered by the petitioner were due to the loss of access, and that a way practicable for all reasonable and necessary purposes of transportation or of travel for the remainder of the term of the lease could have been had to the street, then the cost of obtaining such a way would be the measure of damages or the difference in the fair market value of the leasehold."

Other material facts are stated in the opinion.

The jury assessed the damages resulting from the changes incident to the abolition of the grade crossing in the sum of $50,196.57, and apportioned to the petitioner $49,654.57, and to an assignee of the lessor Watson $542. In answer to special questions, the jury found that the petitioner suffered no special damage during construction, and that the damage in the matter of access amounted to $300. The respondent and the assignee of the lessor Watson alleged exceptions.

The respondent and the intervening petitioner filed motions for a new trial, the first three grounds of which were that the verdict was against the law, that it was against the law and the evidence, and that it was against the evidence and the weight of the evidence. The fourth ground stated in the motion of the respondent was that the damages awarded were excessive. The fourth ground stated in the motion of the intervening petitioner was that the damages awarded to him were "disproportionate, insufficient and inadequate on any and all possible views of the evidence."

The judge ruled upon the motions as follows:

"The motion of the assignee of Clarence L. Watson* is overruled.

---

* During the trial of this case the judge stated to the jury in substance that it was agreed by the respondent and the intervening petitioner that Thomas W. Hoogs of Boston was " assignee under a written assignment of all the right, title and interest that Clarence L. Watson, lessor," had in the property described in the petition, and "that the said Thomas W. Hoogs is an employee of, and the agent of the New York, New Haven & Hartford Railroad Company, lessee of the respondent, the Boston & Providence Railroad Corporation."

"The motion of the respondent is to be allowed unless the Cornell-Andrews Smelting Company, one of the petitioners, consents in writing within thirty days from the date of the filing of this order to remit all damages in excess of $35,000, and provided further that said respondent files in this Court within said time a written waiver of its exceptions or of its rights to file exceptions in case the exceptions have not already been filed.

"If the respondent does not so file waiver of its exceptions as aforesaid the motion is denied."

To these rulings upon their motions for a new trial, the respondent and the intervening petitioner alleged further exceptions.

*J. L. Hall,* for the respondent.

*J. W. Burke,* for the intervening petitioner.

*C. R. Cummings,* for the petitioner.

SHELDON, J.   This case is somewhat troublesome to deal with by reason of the number and complexity of the questions presented and the difficulty of picking out the decisive points. But that difficulty has been considerably and needlessly increased by the course of the respondent in setting out the testimony by question and answer instead of giving the substance of the evidence in a narrative form. This is a reprehensible method of alleging exceptions. See *Odabashian* v. *Apsley Rubber Co.* 214 Mass. 66. In *Ryder* v. *Jenkins,* 163 Mass. 536, it was held that a bill of exceptions in which all the testimony was stated at length without any attempt at abridgment was rightly disallowed. The language of the statute (R. L. c. 173, § 106) has been modified since that decision, but it would be hard to say that its meaning had been materially altered. See the cases collected in *Commonwealth* v. *New York Central & Hudson River Railroad,* 206 Mass. 417, 419. In *Clemens Electrical Manuf. Co.* v. *Walton,* 173 Mass. 286, there had been an attempt to abridge the evidence. Moreover, all the requests for rulings made by the petitioner, the respondent and the intervening petitioner, are inserted *in extenso,* without stating what ones were given and what were refused, but the court is left to ascertain these important questions from an examination of the charge and of the colloquies between the judge and the different counsel, which are also reported in full. As was said in *Burt* v. *Merchants' Ins. Co.* 115 Mass. 1, 16, such a course cannot be too strongly condemned. No objection however has

been made to the exceptions, by motion to dismiss or otherwise, and we have considered them.

1. We find no error of law in the rulings made as to the boundaries of the land leased to the petitioner, and as to the petitioner's being entitled to some right of way to South Main Street over the respondent's railroad. The land leased to the petitioner was bounded easterly by the respondent's land, though called its layout, and did not purport to be bounded by the original layout of the respondent's railroad. This is too manifest to need discussion. The deed given by Watson and Newell to the respondent reserved to those grantors the right of way over the railroad. This must have been intended and understood to include, indeed it necessarily did include, the right to pass over all the width of the respondent's land, including that conveyed by the deed in question. Otherwise the reservation would have had no effect. That was the right which Watson enjoyed and could transfer to the petitioner; and it sufficiently appears that it was the way actually used by the petitioner over the railroad.

The right of way in the other direction was described in the deed from Manchester to Wolfenden as "a right of open way from my land easterly of said river [Ten Mile River] through said lane to County Street." At this time and previous thereto, according to the testimony of Manchester, a witness for the respondent, the land to which this way was appurtenant, which afterwards passed to Watson, and a part of which constituted the land leased to the petitioner, had no structures upon it and was used exclusively for agricultural purposes. So far as appeared, that part of the way to South Main Street which crossed the respondent's railroad was created in 1836, by the stipulation in the deed of Leprilete Sweet to the respondent for a passway "over said road for farming purposes." This gave a right to use that "passway" for farming purposes only; and the petitioner, as to that part of the way which crossed the original location of the railroad acquired no right to use it for any other than farm purposes. *Atwater* v. *Bodfish,* 11 Gray, 150. *Parks* v. *Bishop,* 120 Mass. 340. *Baldwin* v. *Boston & Maine Railroad,* 181 Mass. 166, 168. *Nye* v. *Swift,* 190 Mass. 143, 147. *Allan* v. *Gomme,* 11 Ad. & El. 759. *Henning* v. *Burnet,* 8 Exch. 187. There was not here a general grant or reservation of an unrestricted right of way, as might have been the case if the question

had arisen under language like that in the deed from Manchester to Wolfenden, "a right of open way." Had there been in the deed from Sweet to the respondent such a reservation of an unrestricted right of way, the weight of authority is in favor of the contention that the way would have been available to the owners of the dominant estate for any changed use to which that estate afterwards might reasonably be put. *Johnson* v. *Kinnicutt*, 2 Cush. 153, 157. *Blood* v. *Millard*, 172 Mass. 65. *Gorton-Pew Fisheries Co.* v. *Tolman*, 210 Mass. 402, 412. *Randall* v. *Grant*, 210 Mass. 302. *Abbott* v. *Butler*, 59 N. H. 317. *Arnold* v. *Fee*, 148 N. Y. 214. *Gunson* v. *Healy*, 100 Penn. St. 42. Accordingly, so far as the way to County Street is concerned, we find no error in the rulings made at the trial. We do not overlook the fact that there was evidence of a more unrestricted use of the way over the railroad; but the purpose for which this evidence was admitted was narrowly limited, and we cannot treat it as tending to show that any increased right had been gained by prescription. The petitioner's lease did purport to give to it a right of way over the railroad; but that could pass no greater right than belonged to Watson himself. In the absence of evidence that any increased right had become vested in the petitioner, the jury should have been instructed that the petitioner had no right to use that portion of the way which crossed the railroad for any other than farming purposes.

This ruling was made at first; but the judge afterwards withdrew it, and instead thereof read to the jury some of the language used in the opinion of this court reported in 202 Mass. 595, 596, 597. That language, however correct upon the facts then appearing, was inapplicable to the issue as presented at this trial. For this reason the respondent's exceptions must be sustained.

2. The contention that the damages should be assessed according to the provisions of R. L. c. 48, §§ 17, 18, and not in the manner prescribed by §§ 20–22 of the same chapter, we do not consider to be open to the respondent. It has no concern with the division of the damages between the lessor and the lessee. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 10 Cush. 385, 387. *Providence, Fall River & Newport Steamboat Co.* v. *Fall River*, 187 Mass. 45, 50. As was said by Wells, J., in *Edmands* v. *Boston*, 108 Mass. 535, 547, these questions "are important only as between the several petitioners."

3. The judge rightly ruled that the measure of damages was not what it would cost to buy land to construct a way, or the cost of building a way out of the petitioner's premises. That was a circumstance to be considered; but it was not as matter of law the measure of the damages. This is settled by the former decisions of this case. 202 Mass. 585, 599 et seq.; 209 Mass. 298, 314, 315. The instructions as to this point and as to the respondent's second request were adequate and correct. The judge ruled also that the petitioner, being a foreign corporation, was not an inhabitant of Attleborough, and had no right to apply to the selectmen of that town to lay out a way under the provisions of R. L. c. 48, §§ 65, 74. The respondent contends that this ruling was erroneous. If this ruling had stood alone, it may be that there would have been some difficulty in sustaining it. But that is not the case. The judge immediately added that the petitioner could have applied to the county commissioners, and that it would be for those commissioners to pass upon the application. Whether this was right or wrong, the respondent cannot complain of it. And the judge fairly left it to the jury to say how far the value of the property and the amount of the damage to be assessed was affected by the possibility of such a way being laid out and constructed. The respondent was not aggrieved by the rulings made upon this branch of the case.

4. The respondent's ninth and tenth requests were properly refused. *Rogers & Co.* v. *Simmons,* 155 Mass. 259. *National Fertilizer Co.* v. *Fall River Five Cents Savings Bank,* 196 Mass. 458. *Thornley* v. *J. C. Walsh Co.* 200 Mass. 179. The petitioner had complied with the requirements of our statutes, not only before this suit was brought, but before the making of the decree by which its property was affected.

5. We cannot say that the judge erred in admitting Hartwell's testimony as to the fair market value of the buildings. He was an experienced builder, and had constructed the buildings for the petitioner's original plant. That he was not acquainted with the prices paid for real estate in Attleborough was not decisive against the competence of his testimony. He testified only as to the buildings.

6. The testimony of Andrews as to what he found in the books of the petitioner could be admitted in the discretion of the judge.

The petitioner had produced the books at the request of the respondent, and the respondent had examined them by its expert. They could have been put in evidence by the petitioner. *Long v. Drew,* 114 Mass. 77. This being so, the questions put could properly be allowed. *Boston & Worcester Railroad v. Dana,* 1 Gray, 83, 104. *Jordan v. Osgood,* 109 Mass. 457, 464. *Bicknell v. Mellett,* 160 Mass. 328.

7. We cannot say that the testimony about the existence or non-existence of other factories in New England engaged in rolling, smelting and refining was either incompetent or prejudicial to the respondent.

8. The testimony as to dust and dirt coming into the factory from the causeway of the new street after that had been completed was not prejudicial to the respondent. See *Hubbard v. Webster,* 118 Mass. 599; *Pye v. Faxon,* 156 Mass. 471, 474; *Cotton v. Boston Elevated Railway,* 191 Mass. 103; *Hyde v. Fall River,* 189 Mass. 439. Testimony that dust and dirt came from the railroad after the change of grade had been made was excluded. The petitioner was not allowed to recover for injury to its business.

9. The testimony as to the insurability of the property was not incompetent. This was a circumstance that might affect its value. If the effect was a permanent one, that also might be shown. The jury were told to consider this evidence only as it might affect the market value of the property. *Webber v. Eastern Railroad,* 2 Met. 147. Here, as in many of its exceptions, the respondent seems to have overlooked the fact that the first question which the jury were to decide was the amount of the whole damage done to the property considered as one undivided estate, and that the respondent had nothing to do with the subsequent apportionment of this amount between the lessor and the lessee.

10. It is not necessary to discuss the respondent's other exceptions. None of them can be sustained. The rules of damages to be applied have been sufficiently declared in the former decisions made in this case. 202 Mass. 585; 209 Mass. 298. We do not care to reiterate the reasoning of those opinions.

11. The exceptions of the intervening petitioner raise the question whether the damages rightly were assessed under the provisions of R. L. c. 48, §§ 20–22, or whether the rule of division laid down in §§ 17, 18 of the same chapter should have been fol-

lowed.  But that now is hardly an open question.  It was really decided against the present contention of the intervening petitioner in the first opinion rendered in this case.  *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 202 Mass. 585, 597, 598.  It was held again when the case once more came before us (209 Mass. 298, 314) that the proper course to be taken was that which was adopted at the last trial.  It was there said by Loring, J., after he had shown that the lessor ought to file an intervening petition in this action: "At the trial on the lessee's petition and that intervening petition the entire damage done to the land leased to the Cornell-Andrews Company, including the buildings and the fixed machinery put in them by the lessee, must be determined and set forth in the verdict.  Then the amount of this entire damage . . . must be apportioned between the lessor and lessee."  The rights of the lessor and the lessee as between themselves depend of course upon their agreements as shown by the lease.  That was not a bare lease of the land.  It gave to the petitioner rights of way outside the leased premises, which rights apparently were of value, and, it is contended, have been practically destroyed by the taking.  It was contemplated that the lessee should erect buildings and install machinery; and it did so.  It had a right to remove these trade fixtures, or some of them.  This it has not done; but one of its complaints, one of the grounds upon which it claims damages, is the injury to the value of the property which it had a right to remove, an injury which it contends was so great as to be tantamount to a destruction of that value; and it is for the jury to pass upon the validity of this claim and to determine what damages, if any, should be allowed therefor.  The case comes within the doctrine of *Edmands* v. *Boston,* 108 Mass. 535, and *Providence, Fall River & Newport Steamboat Co.* v. *Fall River,* 187 Mass. 45.  The remarks in *Willard* v. *Boston,* 149 Mass. 176, 178, and *Galeano* v. *Boston,* 195 Mass. 64, 67, that the question is to be determined by the condition of the title as shown at the trial, refer to the condition of the title at the time of the bringing of the petition.  It is the condition at that time which fixes the rights of the parties, and the proof of which at the trial enables the court to determine what those rights are.  Those remarks do not mean that the question is to be reopened at each new trial, and that the result reached is to be varied according as some particular estate or some one of

its incidents may have undergone a change since the bringing of the petition or since the former trial, or as some right to remove trade fixtures may or may not have been exercised in the meantime or may have had its value increased or lessened by the effect upon those fixtures of the taking made. Such circumstances may, by throwing a new light upon the old situation, cause a change in the *quantum* of damages to be allowed, or in the amount of the respective shares to be apportioned to the different parties in interest; but they cannot affect the right which either party has acquired to have the damages assessed and apportioned in the one way or the other, as would have been the case if the assessment and apportionment had actually been made, as theoretically they are made, at the very instant of the taking when the right of the owners of the different estates or interests accrued.

12. The intervening petitioner has argued also that the lessee had no right to remove the buildings and fixed machinery from the leased land, that they became when erected and installed the absolute property of the lessor. But this is not open upon his exceptions. The judge expressly ruled at the request of the intervening petitioner, that with respect to the damage to the use and occupation of the land, including the building and fixed machinery, the lessor Watson is entitled to all the damage for the period subsequent to the unexpired term of the lease. That included everything asked for by the intervening petitioner with reference to this part of the case. He did not ask for a ruling that there never had been a right of removal of the buildings and fixed machinery, and did not except to the rulings made upon this question. As there must be a new trial, we add that so far as his present contentions go further than the rulings that were made at his request, we regard the previous decisions made in this case as decisive against him.

13. No error is shown by any of the other exceptions alleged by the intervening petitioner.

As the petitions must be tried again, we have no need to consider the questions raised by the exceptions to the judge's conditional order for a new trial.

*Exceptions sustained.*