ERNEST G. A. ISENBECK *vs.* GEORGE BURROUGHS & another.

Suffolk. March 2, 1914. — May 21, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Practice, Civil,* Exceptions. *Deceit. Agency. Broker. Contract,* Validity,
Construction.

St. 1908, c. 177, contains no justification for an unnecessarily and unreasonably
long bill of exceptions, in which the real questions for argument "are so cov-
ered up by a mass of irrelevant matter as to involve a serious danger that some-
thing material may be overlooked;" and, in stating that "such a bill ought not
to have been brought before the court," it was said that "it may become a
question, if this practice shall be persisted in and the objection shall be taken
seasonably, whether such a bill ought not to be dismissed without argument."

A real estate dealer may maintain an action for deceit against a real estate broker
for false and fraudulent representations that the defendant was the agent of
the owner of certain real estate and that the lowest price for which such owner
would sell it was $35,000, whereby the plaintiff was induced to pay the defendant
that sum for the real estate, although the owner of the real estate asked and
received only $25,000, the remaining $10,000 being retained by the defendant.

One who takes the benefit of false and fraudulent representations, made by a
person assuming to act as his agent, is liable in an action for deceit for a loss
incurred by a person who was induced by such false representations to pay an
unnecessarily high price for certain property.

A plaintiff in an action for deceit, who shows that he was induced to pay an un-
necessarily high price for certain property by reason of false and fraudulent
representations for which the defendant was responsible, is not deprived of his
right to recover for his loss by defects in his own character nor by the nature
of his dealings with third persons in regard to the property and the amount of
profit that he realized from the transaction.

In an action, by a real estate dealer against a real estate broker, for alleged false
and fraudulent representations that the defendant was the agent of the owners
of certain real estate and that the lowest price for which such owners would sell

it was a certain sum of money, which the plaintiff was induced to pay for it, whereas the owners sold the property to the defendant for a much smaller price, if it appears that the owners held the property in question as the trustees of an unincorporated association and that under the terms of the deed of trust there were difficulties to be overcome by the trustees before they could regard themselves as justified in making an actual conveyance, an agreement in writing signed by the defendant, which is put in evidence by the plaintiff, whereby the defendant agreed with the plaintiff to use his "best efforts for me, and in my behalf only, to acquire said property," and that if the defendant does not succeed before a certain day, "all obligations on both sides shall cease," is not as matter of law a corrupt agreement to act for both sides, because the jury can find that this agreement is merely that the defendant will use his best efforts to overcome such obstacles and that the contract shall not be binding if the obstacles cannot be overcome, which would be a proper agreement to be made by the agent of the trustees and would be no bar to the plaintiff's recovery.

Where at a trial, after the plaintiff's witnesses have been heard in full and two witnesses called by the defendant also have testified, the defendant asks the judge to rule that the plaintiff is not entitled to go to the jury and to order a verdict for the defendant, and the judge so rules and orders such a verdict, upon the allowance of exceptions alleged by the plaintiff it is proper for the judge to exclude from the bill of exceptions, against the defendant's objection, the testimony of the two witnesses called by the defendant, their testimony not being material upon the question whether the plaintiff presented any evidence that entitled him to go to the jury.

TORT, by a dealer in real estate against the members of a firm of real estate brokers, for alleged false and fraudulent representations by which the plaintiff was induced to pay $35,000 for the equity of redemption in certain real estate numbered 251 and 259 on Atlantic Avenue in Boston, which was held by the trustees of an unincorporated association called the Atlantic Real Estate Trust, when the property thus purchased by the plaintiff could have been bought for $25,000, which was all that the trustees in fact received for it, the defendants being alleged to have retained the balance for their own benefit. Writ dated October 30, 1909.

In the Superior Court the case was tried before *Lawton,* J. The plaintiff put in evidence certain documents and the testimony of various witnesses, including that of the two defendants. This evidence is described in the opinion. The defendants then called two witnesses, who also testified. The defendants, "desiring to present the question whether there was any evidence for the jury under the substituted declaration, were permitted without cross-examining the plaintiff and Chaffee [mentioned in the opinion] to move at the conclusion of the evidence mentioned above, that a

verdict be directed for the defendants." The judge ordered a verdict for the defendants; and the plaintiff alleged exceptions, raising the questions described in the opinion. At the allowance of the bill of exceptions, the defendants moved that the testimony of the two witnesses called by them should be reported. The judge denied this motion, and, in allowing the bill, ruled, against the defendants' objection, that the testimony of the two witnesses called by the defendants "should not form part of the bill."

R. W. *Nason,* (J. E. *Worcester* with him,) for the plaintiff.

R. W. *Hale,* (J. M. *Maguire* with him,) for the defendants.

SHELDON, J. This bill of exceptions is unnecessarily and unreasonably long. It is open to all the animadversions which were made in *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 215 Mass. 381, 387. The real questions raised at the argument are so covered up by a mass of irrelevant matter as to involve a serious danger that something material may be overlooked. Such a bill ought not to have been brought before the court. It may become a question, if this practice shall be persisted in and the objection shall be taken seasonably, whether such a bill ought not to be dismissed without argument. There is no justification for it in St. 1908, c. 177.

The plaintiff's complaint is that in his dealing with the defendants for the purchase of a certain estate in Boston they falsely represented to him that they were acting as agents for the owners; that the lowest price for which the owners would sell the estate, or rather the equity of redemption therein, was $35,000; that the plaintiff believed this, and in consequence thereof and reliance thereon bought the equity of redemption for that price, and paid $35,000 therefor; but that in fact the price fixed by the owners was only $25,000, and the owners received only that sum; that the defendants were not really acting as agents for the owners in their dealings with the plaintiff, but themselves bought from the owners for the smaller price which has been stated; and that the rest of what was paid by the plaintiff, to wit, the sum of $10,000, went into the pockets of the defendants. This was substantially set forth in the amended declaration. It was a good cause of action.

If these allegations were proved, there were false and fraudulent representations made by the defendants of matters pecu-

liarly within their knowledge, which bore directly upon the amount of the price to be paid by the plaintiff, and were precisely adapted to cause him a loss of $10,000. It comes within the rule of *Kilgore* v. *Bruce,* 166 Mass. 136. Except that here the fraud is alleged to have been practiced by pretended agents for their own benefit, the case now presented is the same in principle as that put as an illustration by the court on page 139 of the opinion in *Kilgore* v. *Bruce, ubi supra,* and the cases there cited.

There was evidence in support of the plaintiff's allegations. That the negotiations or some of them were carried on through Chaffee and Randall, either acting or purporting to act for the plaintiff and the defendants respectively, is not necessarily decisive of the issue. On the evidence, the questions of agency and authority were for the jury. Indeed, if, as could be found, Randall was acting for the defendants in negotiating with the plaintiff, and if the defendants took the benefit of false and fraudulent representations made by Randall to the plaintiff to induce him to pay the higher price, it could be found that the defendants were responsible for these representations as if made by themselves. *Jewett* v. *Carter,* 132 Mass. 335. *Haskell* v. *Starbird,* 152 Mass. 117. *Thompson* v. *Barry,* 184 Mass. 429, 433. *Leslie* v. *Jaquith,* 201 Mass. 242. As was said by this court in *Lovett, Hart & Phipps Co.* v. *Sullivan,* 189 Mass. 535, 536, 537, "A person who has derived a benefit through the fraud of his agent cannot keep the fruits of the bargain, thus ratifying the fraud, without being liable in an action for deceit."

We do not care to recapitulate the testimony. There was evidence, the weight of which it is not for us to pass upon, tending to prove the material averments of the declaration. Doubtless there was much evidence to the contrary; and this has been made the most of in the argument of the defendants' counsel, — to an extent indeed which lends some color to the assertion made by the plaintiff's counsel that the reprehensibly voluminous statements of the bill of exceptions are due mainly to the insistence of the defendants. But the considerations which have been urged for the defendants, though proper for the jury, cannot affect our decision. Neither the character of the plaintiff, nor the nature of his dealings with third persons about this property, nor the amount of the profit which he made out of these transactions,

could as matter of law prevent his recovery. Whatever the facts might be as to these matters, it still would remain true, if he proved his allegations, that the fraud practiced upon him by the defendants had caused him a large pecuniary loss.

There is, however, one matter which calls for examination. After the payment of $1,000 made by the plaintiff through Chaffee to the defendants, apparently to bind the bargain, he took from the defendants a paper which read as follows:

"Received of William R. Chaffee one thousand dollars ($1,000.00) to be applied on purchase price of the estate 251 to 259 Atlantic Avenue, Boston, the title to said estate being now in William F. Wharton et al, Trustees; the purchase price to be $185,000.

"Insurance, taxes and rents to be adjusted as of date of transfer, and the property to be delivered free of all incumbrances.

"It is understood and agreed that Messrs. Burroughs and De Blois [the defendants] will use their best efforts for me, and in my behalf only, to acquire said property, and if they do not succeed on or before July 5, 1906, the thousand dollars aforementioned shall be returned to me and all obligations on both sides shall cease.

"Two weeks shall be added to pass the papers after July 5th if necessary."

The evidence was, as indeed the language used would indicate, that the third paragraph of this paper was added to it by the plaintiff after the paper had been drawn by the defendants.

It is settled that if the defendants were, as the plaintiff alleged that they represented themselves as being, acting in this matter as the agents of the owners, they stood in a relation of trust and confidence to those owners. The plaintiff, according to his contention, was dealing with the defendants as such agents, on the faith of their representations. He, of course, was bound by the same rules in dealing with them as if they really had been such agents. But as such agents it was the duty of the defendants not only to act in every respect for the interests of the owners, who were, *ex hypothesi*, their principals, but to refrain from any conduct and from the making of any agreement which should put them into a position, or bind them to the performance of any stipulation, that would be antagonis-

tic to the interest of their principals. They could enforce no agreement made by themselves with other parties which would come under this prohibition. *Ebert* v. *Haskell, ante,* 209. And as the reason why they could not enforce such an agreement is that it would be against public policy as calling for fraudulent conduct on their part, so neither could it be enforced against them by a party who when he made it knew of its fraudulent character and shared in its wrongful purpose. But the plaintiff knew of the defendants' employment and of their obligations to their principals, if his case is well founded. He knew of the character and must have shared in the purpose of this agreement, and so could not enforce against the defendants either the stipulations of the agreement itself or any right growing out of the dealings of which it expressed the conclusion, if the agreement or this stipulation of the agreement was of the fraudulent character which we have stated. We must therefore consider the character of this stipulation, in the light of the circumstances under which it was made.

The jury could have found that, when the defendants executed this paper, an agreement had been made by them in behalf of their principals with Chaffee, representing the plaintiff, to sell to him this estate for the price of $185,000, which would represent a price of $35,000 for the equity of redemption, and that Chaffee for the plaintiff had paid $1,000 as part of that price. Of course, as against the defendants, it could be taken that this was a valid agreement for the sale of the property, authorized by and binding upon the owners according to its terms. But there was evidence that these owners were trustees, who held under a declaration of trust for the members of or shareholders in an unincorporated association, and that under the terms of the trust there were difficulties to be overcome before the trustees should regard themselves as justified in making an actual conveyance. Considerable effort might be, and apparently was, necessary to overcome those difficulties; and under the terms of this paper, if that effort failed, the money paid by the plaintiff through Chaffee was to be returned to him, and all further obligations of both parties were to cease. That is, there was here, as it could be found, a completed agreement, subject however to the stipulation that it should become void if the existing obstacles to its consumma-

tion by a conveyance of the property could not be overcome. Under such circumstances, an agreement by the owners to use their best efforts to overcome these obstacles for the benefit of the plaintiff would be a natural and proper agreement for them to make. That was the agreement made here; and the contention of the plaintiff, which as we have said was sustained by some evidence, was that in the whole transaction, including the making of this agreement, the defendants claimed to be acting for the owners. The plaintiff, if he himself was acting in good faith, might presume that the defendants also were acting in good faith, within the limits of their authority and with the knowledge and consent of their principals. The jury might have found this to be the case. If so, the making of this agreement would not be a bar to the plaintiff's recovery. Of course, if such a finding were not made, if the plaintiff really intended to obtain for himself the services of the defendants in fraud of their obligations to their alleged principals, he could not recover. But the question was for the jury.

We find nothing in this paper which as a matter of law is conclusive against the plaintiff's contention that the defendants executed it as agents for the owners, and not in their own behalf.

The defendants contend that these exceptions should be dismissed, or should not be sustained, because they do not set forth the testimony of two witnesses called by the defendants. But the judge at the trial made his ruling upon the case put in by the plaintiff. The exceptions recite that the judge ruled accordingly that the testimony of these two witnesses should not be stated. After this ruling, the plaintiff could not have stated that testimony; nor do we see how it would have been material. It scarcely could have affected in favor of the defendants the only question presented to us, whether there was any evidence on which a verdict could have been rendered in favor of the plaintiff.

In our opinion the case should have been submitted to the jury; and the order must be

*Exceptions sustained.*