JOSEPHINE ROMANA *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   March 10, 11, 1914. — May 23, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Practice, Civil,* Exceptions, Conduct of trial: requests and rulings. *Negligence,* Invited person, Licensee, In use of electricity, Wanton, reckless or wilful misconduct.

It here was *intimated* that, if the practice of presenting to this court unnecessarily and unreasonably voluminous bills of exceptions, calling "for undue effort on the part of the court to pick out the few important facts from the undigested mass of irrelevant and impertinent facts with which they are covered up," is persisted in, it may call for drastic action to be taken by this court of its own motion.

The mere facts that a street railway company placed a fence around a car barn maintained by it in such a position with reference to a well worn path, which was outside of the fence but on its premises, that persons were likely to be and were attracted to the use of the path, and that it permitted such use, in the absence of evidence that the path was laid out or wrought by it, does not constitute even an implied invitation by it to such persons to use the premises; and in an action against the company by a child who while using the path was injured by a shock from a current of electricity in a pole of the defendant near the path, the plaintiff does not have the rights of a person invited to use the path, but only those of a licensee, and in order to recover must show that his injuries were caused by wilful, wanton or reckless misconduct on the part of the defendant or of its servants or agents.

In an action by a girl ten years of age against a street railway company for personal injuries sustained, while the plaintiff was using a path upon premises of the defendant near a car barn, by her coming in contact with a pole next to the path charged with electricity from the defendant's wires, there was evidence which

tended to show that the path was used generally by children and others in the neighborhood with the acquiescence of the defendant, that, about five hours before the plaintiff was injured, a boy had received a shock from the same pole, that he and his companions had warned an employee of the defendant in charge of the premises as to the condition of the pole and that nothing was done by the defendant either by way of withdrawing the license to use the path, of checking the escape of electricity into the pole or of giving any warning to persons using the path. *Held,* that findings were warranted that the conduct of the defendant through its employee was intentional and had a natural tendency to injure others, including the plaintiff, that such conduct was known or should have been known by the defendant, and that it was accompanied by a wanton and reckless disregard of its probable consequences.

Where, at the trial of an action for personal injuries sustained while the plaintiff was using a path on premises of the defendant, there is no evidence which will warrant a finding that the plaintiff was invited to use the path, but there is evidence tending to show that he was using it as a licensee of the defendant, and also evidence tending to show that he was a trespasser thereon and that the defendant was guilty of wanton, reckless and wilful misconduct toward him, which caused his injury, if the judge, subject to exceptions by the defendant, leaves to the jury the question, whether the plaintiff was invited by the defendant to use the path, with appropriate instructions as to the defendant's duty in case he was found to have been so invited, and also charges them that, if he was not invited, he was a trespasser thereon and that the defendant owed him no duty excepting to refrain from wanton, reckless and wilful misconduct, and the jury finds for the plaintiff, the defendant's exceptions must be sustained, because the jury might have found that the plaintiff was invited to use the path and was injured by negligence of the defendant which was not wanton, reckless or wilful misconduct.

At the trial of an action against a corporation for personal injuries suffered by a trespasser or mere licensee upon premises of the defendant, the judge is not required to give at the request of the defendant a ruling that "the wilful and wanton negligence of which the defendant must have been guilty to make it liable . . . is a degree of negligence for which in a case resulting in death a jury in a criminal case could find a verdict of manslaughter."

TORT for personal injuries alleged to have been sustained when the plaintiff, a child ten years of age, was walking on a path upon premises of the defendant in that part of Boston called East Boston and fell against a pole which was charged with electricity. Writ dated December 6, 1909.

In the Superior Court the case was tried before *Wait,* J. The plaintiff's evidence tended to show the following facts: The defendant owned land, which was bounded southerly on Eagle Street in East Boston and northerly by the harbor, and upon which it maintained a car barn. On the easterly line of the lot there was a high board fence, separating it from vacant and unfenced land called the Rice lot and running to a ridge near high water

mark, where it turned and ran on the defendant's land and on or nearly on the ridge with various turns to the barn. Running across the Rice lot and just outside of the fence just described to the water, was a well defined path which with the defendant's knowledge and acquiescence for many years had been used by the children and others in the neighborhood to get to the water and flats for play and other purposes. Right beside the path and between it and the fence and about nine feet from a turn in the path near the crest of the ridge, the defendant maintained a pole with wires upon it. The plaintiff was walking along the path toward the water at six o'clock in the afternoon on September 1, 1909, which was a wet day, when she was tripped by some wires in the path and fell against the pole, receiving an electric shock and burns. At about one o'clock on the same afternoon a boy had received a shock from the same pole and he and his playmates had told one Sullivan that the pole was charged. The boy testified that Sullivan stated to him and his companions, "Oh, get out of here. What are you, fooling?" and that he replied, "No." He described Sullivan's duties as telling "the conductors which place the cars would go, where to put their cars."

An electrical engineer testified that the fact that the pole was charged indicated that the wires, which carried the voltage normally and which were insulated from the pole, had become defective in their insulation so that the current got out of the proper channel and got into the pole, either by the breaking down of the insulation or by the breaking of a wire carrying a current which might actually touch a pole, that if the contact through the earth was not good, then the pole would be charged; that under such conditions there would be more danger of getting a shock in wet weather; and that it was not difficult to ascertain whether the insulation was defective.

At the close of the evidence the defendant asked the presiding judge to order a verdict for the defendant. The request was refused.

The ninth ruling requested by the defendant and referred to in the opinion was as follows: "9. The wilful and wanton negligence of which the defendant must have been guilty to make it liable in this case is a degree of negligence for which in a case resulting in death a jury in a criminal case could find a verdict of manslaughter."

Material portions of the charge to the jury were as fol

"One of the questions which arise in this case is as to whe
this little girl had any rights upon the property where she was, if
she stood in any such relation to the defendant . . . that any duty
was owed to her. If she was a trespasser there was no duty owed
to her except the duty to refrain from wanton and reckless injury
to her. If she was invited to go upon the premises, then a different
situation may exist, and it is possible that in this case you may have
to consider just exactly what her position was.

"The only possible ground upon which you can say that she
was invited there, or was permitted to be there — there isn't
any evidence that she was invited to go there — whether or not
she was permitted to go there depends simply upon this: the only
evidence there is in this case which can justify you in finding
that is that you find that the fence at the rear of that property
was placed where it was so as to enable people to go behind it
along the top of the bank; that there was a path there, and that
the fence was put where it was, as counsel has just argued to you,
in order to let the path be where it was and to allow people to
use it. Now, is that the fact? Was the fence placed as near the
edge of the bank as it could reasonably be placed and stand safely,
or was it put where it was so that people might be at liberty to pass
behind it, people whom the owner of the land anticipated would
go over the land and would be permitted to go over the land?

"If people were allowed to go there, if the fence was arranged
in such a way as in substance to extend an invitation to go across
that path, if the path existed there, then the person allowing it
would be bound to use the care of a reasonably prudent and care-
ful person to guard against injury to people there from any un-
expected or new danger. . . .

"Unless that is made out by a fair preponderance of the evi-
dence, then this little girl was a trespasser; that is to say, she was
a person that went there without any right; and in that case the
only duty which was owed to her, as I have just stated to you, was
that the defendant should not wilfully or wantonly injure her;
so that what she would have to prove in that case if she were to
recover is that there was a leaking of electricity into the pole there,
that that caused her injury, and in addition to that she must
show that the defendant had knowledge of that condition and that

s wanton and wilful recklessness to allow this condition to cinue to exist.

"Now, wanton and wilful recklessness means something more than just simple ordinary carelessness. It means something more than what is sometimes referred to as gross negligence. It means either an intentional causing of injury, about which there is no claim in this case, unless you are to take the argument of the plaintiff's counsel that the defendant company arranged that wire, which has been testified to here, for the purpose of giving shocks to people that were trespassing upon their premises. If you think that is so, why, then you can say that there was an intentional causing of injury or such a disregard of the possibility that people would be injured that it indicated a lack of care whether any one was hurt or not, and under such circumstances that the person who was in that state of mind realized that injury was extremely probable unless precaution was taken.

"If, for instance, gentlemen, I have under my control some extremely dangerous thing and know that a careless act on my part in the caring for it is likely to cause serious injury to other people, and I say to myself with regard to doing one thing or another in regard to it, 'Well, let her go, I don't care,' and then somebody is hurt, you would be justified in saying that I did not care if somebody was hurt, that I had realized the possibility of their being hurt, and that rather than take the trouble to guard against it I had said that I did not care. It would indicate a carelessness on my part as to whether anybody was hurt or not, and I would then be wantonly careless and I would be held liable if somebody was hurt in consequence of my act.

"But if, knowing I had such a thing under my control, having no reason to suppose that anybody was coming anywhere near it to get hurt, and that there was any serious danger of anybody being hurt, I should fail to do some particular thing which might make it additionally secure, you would not be justified in saying that I was wantonly careless, because there would be nothing to indicate that I had considered it probable that people would be hurt and that I was disregarding that probability. The essential thing in what the law calls wilful and wanton neglect is the recognition of the possibility of harm, and carelessness to that possibility.

"The plaintiff would have to satisfy you in this case then, if

e find no evidence that it was in consequence of an invitation inducement from the defendant, express or implied, that the plaintiff went upon the defendant's land to the place where she was injured. There was evidence that the defendant had permitted the use of this path by children and others living in that neighborhood or coming thither, including the plaintiff, but nothing more than this. She had while she was on the defendant's premises merely the rights of a licensee. The defendant, so far as appeared, had not laid out or wrought the path for use as a way by any one; and such cases as *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368, and *Holmes* v. *Drew*, 151 Mass. 578, have no application. The fact, which the jury might infer from the evidence, that the defendant suffered its premises to be in a condition which was likely to attract people and did attract the plaintiff, does not constitute even an implied invitation. *Wright* v. *Boston & Albany Railroad*, 142 Mass. 296. *Daniels* v. *New York & New England Railroad*, 154 Mass. 349. *Gay* v. *Essex Electric Street Railway*, 159 Mass. 238, 241. *Holbrook* v. *Aldrich*, 168 Mass. 15, 16. *Brayden* v. *New York, New Haven, & Hartford Railroad*, 172 Mass. 225, 226. *Griswold* v. *Boston & Maine Railroad*, 183 Mass. 434. *West* v. *Poor*, 196 Mass. 183. *Norris* v. *Hugh Nawn Contracting Co.* 206 Mass. 58. The defendant owed therefore no other duty to the plaintiff than to abstain from any wilful, wanton or reckless conduct that was likely to do her injury. That is, the plaintiff had no right of action, unless she could show that her injury was due to the wilful, wanton or reckless misconduct or negligence of the defendant or of the defendant's servants in charge of the place, or to actual force used against her by them. *Stevens* v. *Nichols*, 155 Mass. 472, 475. *Byrnes* v. *Boston & Maine Railroad*, 181 Mass. 322.

But in our opinion there was evidence from which it could be found that the plaintiff's injury was so caused. There was evidence which warranted a finding that Sullivan was a servant of the defendant whom it had put in charge of these premises, and that before the happening of the accident Sullivan had been warned that electricity was escaping from the defendant's wires into the pole. This was a source of concealed danger to children and others who, as the jury could find, were in the habit of going by the path past the pole with the knowledge and by the license of the

she was a trespasser, that there was a knowledge of a dange\
condition existing upon the premises at the time, a probabi\
of extreme injury to anybody if that danger were not guarded
against, and a failure to guard against it. . . .

"Even if you should believe that the pole or wires, or both,
had been in a dangerous condition, by reason of electrical leakage,
or otherwise, for some days prior to the accident, and that knowl-
edge of that fact had been communicated to the witness Sullivan,
such evidence would not be sufficient evidence of wilful and wanton
conduct on the part of the defendant in not removing the danger
prior to the accident, unless you are satisfied that the witness
Sullivan was a person in charge of the premises and who in the
ordinary course of his duty was charged with seeing that the prem-
ises were safe."

The jury found for the plaintiff in the sum of $10,000; and the
defendant alleged exceptions.

The bill of exceptions, exclusive of annexed exhibits, filled sixty-
three pages of the printed record. Thirty-nine pages were oc-
cupied by testimony of fifteen witnesses for the plaintiff and
twelve witnesses for the defendant, set out almost entirely in
question and answer form.

*W. G. Thompson & S. E. Wardwell,* for the defendant.

*F. J. Daggett, (J. T. Cassidy* with him,) for the plaintiff.

SHELDON, J. This bill of exceptions is of a kind that is becom-
ing too frequent, — so frequent as to suggest that if persisted in
it may call for drastic action to be taken by the court of its own
motion. It is such a bill as ought not to have been presented or
allowed. It calls for undue effort on the part of the court to pick
out the few important facts from the undigested mass of irrelevant
and impertinent facts with which they are covered up. See
*Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,*
215 Mass. 381, 387, and cases there cited; *Isenbeck* v. *Burroughs,*
217 Mass. 537. That there was no necessity for so voluminous
a bill is manifest from a reference to the briefs of counsel, in each
of which the material facts and evidence and the questions of law
raised thereon are set forth with ample fulness but in a very much
smaller compass than was taken for the exceptions. We shall
not attempt in dealing with such a bill to do more than state the
conclusions which we have reached.

defendant. The situation was such, and was known by the defendant to be such, as the jury could find, as to bring those children in passing by the pole into close proximity to it and very likely into actual contact with it. The defendant through Sullivan had notice that they were exposed to imminent danger from the escape of electricity It is a matter of common knowledge that electricity is a highly dangerous force or substance, and the resulting danger to life or limb could be taken to have been known to the defendant. It is as if the defendant for its own purposes lawfully had kept there a store of gunpowder or of dynamite, safe while kept as it should be, and then, with knowledge that circumstances had arisen which caused serious danger of an explosion, had permitted or licensed people to pass in that immediate vicinity without giving them any warning against the danger to which it thus consented that they ignorantly should expose themselves. The force which the defendant knew was liberating itself in and around the pole was one which the defendant had brought thither for its own use. It was harmless while confined to the system of wires which the defendant had provided for it. It was no less dangerous than a wild and ferocious animal would .have been, if allowed to escape from those wires into the pole. The defendant had notice that the electricity was escaping, and yet neither. withdrew the license which it had given for the use of the path, nor made any effort to guard against the danger which it was creating. Under such circumstances the jury could say that its negligence was wanton or reckless. Its conduct in doing nothing to withdraw the license which it had given, or to check the escape of electricity which constantly was creating a new danger and one more than ordinarily serious, or to give any warning to those who were using the path by its license, could be found to be intentional conduct through its authorized representative, such as had a natural tendency to injure others, which was known or ought to have been known to the defendant, accompanied by a wanton and reckless disregard of its probable consequences. *Banks* v. *Braman,* 188 Mass. 367 and 192 Mass. 162, note. *Yancey* v. *Boston Elevated Railway,* 205 Mass. 162, 171. *Davis* v. *Boston & Northern Street Railway,* 214 Mass 98, 101. We of course do not mean to say that the facts were as we have above stated, or even that such findings would have been in

accordance with the weight of the evidence.  It is enough for us that there was some evidence to sustain them.  It follows that the case was for the jury.

The charge to the jury was a very able and careful one.  But it allowed them to find that the plaintiff was upon the defendant's premises by its implied invitation.  We cannot say that the verdict rendered for the plaintiff did not rest upon such a finding; · and therefore there must be a new trial.

The defendant has no right of exception to the refusal of the judge to give its ninth request.  If given, it would have been necessary for the judge to explain to the jury the rule of responsibility for manslaughter caused by criminal negligence; and that might have tended to confuse rather than to help them.  The instructions given them as to what would constitute wanton or reckless negligence were full and accurate.

It is not necessary to discuss the other matters which have been argued.  It does not seem likely that the questions will arise again in the same way.  It is enough to say that we find no material error other than what has been stated.

*Exceptions sustained.*