COMMONWEALTH *vs.* JOHN J. MCGRATH.

Suffolk.  November 1, 1971. — March 16, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Identification.  Practice, Criminal,* New trial; Exceptions: form· of bill; Assistance of counsel; Findings by jury.

Incorporation by reference of the entire transcript of the evidence into a bill of exceptions in a criminal case does not comply with G. L. c. 231, § 113, and is not permissible; nor is it permissible indiscriminately to reprint the entire transcript in a bill of exceptions.  [433–434]
A judge who hears witnesses in a criminal case, not this court on appellate review, determines the weight and credibility of their testimony.  [437]
There was no error in the admission in evidence of in-court identifications of the defendant at the trial of a criminal case where the judge found that they were clearly and convincingly shown to have a source independent of pre-trial confrontations even if such confrontations were improper.  [436–438]
Evidence warranted the judge in a criminal case in finding that there was no merit in contentions by the defendant that in certain matters his counsel was so incompetent that he was deprived of his right to effective assistance of counsel.  [438–441]

THREE INDICTMENTS found and returned in the Superior Court on April 7, 1967.

A motion for new trial was heard by *Kalus*, J.

*Robert V. Greco* (*Reuben Goodman* with him) for the defendant.

*Elizabeth C. Casey*, Legal Assistant to the District Attorney, for the Commonwealth.

QUIRICO, J.  On July 17, 1967, the defendant was convicted by a jury on one indictment charging him with the crime of armed robbery and two indictments charging him with the crimes of assault by means of a dangerous weapon, all allegedly committed on March 29, 1967.  He was sentenced to the Massachusetts Correctional Institution at Walpole on each indictment. No appeal therefrom to this court was perfected by or on behalf of the defendant.

On April 10, 1970, the defendant filed a motion for a new trial on the following grounds: (1) "The pretrial identification of defendant was so unnecessarily suggestive and conducive to irreparable mistaken identity that petitioner was denied due process of law," and (2) "The quality of representation afforded defendant at his trial was so inadequate that defendant was denied his right to effective assistance of counsel." The motion was heard on May 15, 1970, and denied on May 28, 1970. The case is before us on the defendant's bill of exceptions limited to the denial of his motion.[1]

The only evidence presented by the defendant at the hearing on his motion for a new trial was the 455 page transcript of the entire evidence and proceedings at his original trial. The evidence recorded in that transcript is not summarized or otherwise described in the bill of exceptions before us. Instead the bill says that the transscript "is incorporated herein by reference and made a part of this bill of exceptions." Such a bill undoubtedly does not comply with the requirement of G. L. c. 231, § 113, as amended by St. 1945, c. 328, that "[t]he excep-

---

[1] Sometime after his conviction, the date not appearing in the record, the defendant filed a petition for a writ of error in the Supreme Judicial Court for the County of Suffolk. The petition was heard by a single justice on February 28, 1969. On March 5, 1969, the single justice filed a document entitled "FINDINGS, MEMORANDUM, AND ORDER" which reviewed certain aspects of the defendant's trial in the Superior Court, of the defendant's efforts to have his privately retained trial counsel perfect an appeal from his conviction and sentence and of his own efforts to perfect the appeal. The single justice said in part: "There is thus far no evidence before me to suggest any error in the Superior Court proceedings or any infirmity in the verdict. The only question for decision is whether McGrath, in the circumstances, has been deprived (in contravention of any constitutional rights or privileges) of the opportunity for direct appellate review. The present state of the record is inadequate to enable me to determine whether McGrath is entitled to any relief and the form which that relief, if any, should take." The single justice then suggested the possibility that the defendant could obtain a copy of the transcript without cost to him, and that his petition might be considered further thereafter. The petition was ordered to stand for possible further proceedings. On August 6, 1969, another single justice of this court ordered that the defendant be furnished a free copy of the transcript. The next step shown by the record to have been taken by the defendant was the filing of his motion for a new trial on April 10, 1970. See *Earl* v. *Commonwealth*, 356 Mass. 181, 183–184.

tions shall be reduced to writing in a summary manner and filed with the clerk." The bill does not purport to be an outline bill of exceptions permitting portions of the transcript to be reproduced and filed with the brief. See S. J. C. Rule 1:22, 351 Mass. 742; *Goldman* v. *Mahony,* 354 Mass. 705, 712. The bill filed by the defendant attempts to shift to the court the burden of counsel to go through the 455 page transcript and to summarize the portions of the evidence pertinent to the issues raised. By this bill the defendant also attempts to do something which he could not have done if he had seasonably taken the steps necessary to obtain appellate review of his trial exceptions. The judge, having discretion to do so, denied his motion to make the case subject to G. L. c. 278, §§ 33A-33G. *Commonwealth* v. *King,* 356 Mass. 495, 497. That left the defendant with the right to file a bill of exceptions, which could not properly have incorporated the entire trial transcript either directly or by reference. Although the judge extended the time for filing a bill of exceptions, the defendant filed none.

The attempted incorporation of the entire transcript into the bill by reference is no more permissible than is the actual indiscriminate reprinting of the entire transcript in the bill. We have spoken against the latter practice on a number of occasions. In *Romana* v. *Boston Elev. Ry.* 218 Mass. 76, 81, we said of such a bill: "This bill of exceptions is of a kind that is becoming too frequent, — so frequent as to suggest that if persisted in it may call for drastic action to be taken by the court of its own motion. It is such a bill as ought not to have been presented or allowed. It calls for undue effort on the part of the court to pick out the few important facts from the undigested mass of irrelevant and impertinent facts with which they are covered up." In *Cornell-Andrews Smelting Co.* v. *Boston & Providence R.R.* 215 Mass. 381, 387, we said that "setting out the testimony by question and answer instead of giving the substance of the evidence in a narrative form . . . is a reprehensible method of alleging exceptions." To the same effect, see *Isenbeck* v.

*Burroughs*, 217 Mass. 537, 539; *Corsick* v. *Boston Elev. Ry.* 218 Mass. 144, 145; *Graustein, petitioner*, 305 Mass. 568, 569; and *Rines, petitioner*, 331 Mass. 714, 719–720, app. dism. sub nom. *In re Rines*, 349 U. S. 935, reh. den. 350 U. S. 855. Nevertheless, because the defendant is claiming that he has heretofore been denied his right of appellate review, we consider the exceptions on their merits notwithstanding these defects in the bill, "but this is not to be regarded as a precedent." *Thorndike, petitioner*, 254 Mass. 256, 257.

1. The defendant argues that his right to due process of law under the Fourteenth Amendment to the Constitution of the United States was violated by the judge's permitting three witnesses to identify him in court as one of the two persons who committed a robbery from which indictments resulted. The robbery occurred on March 29, 1967. The next day one of the witnesses (McIsaac) was taken to the police station and there asked to identify the defendant who was in a room with two police officers. The following day the two other witnesses (Barrone and Macey) were called to a District Court and shown the defendant and the codefendant charged with the same crime when the two were in the dock with another person. In both instances the witnesses identified the defendant as one of the two men who had committed the robbery. The defendant was without counsel on both occasions.

The defendant makes no claim that the out-of-court identifications by the witnesses violated his Sixth Amendment right to counsel. This is obviously due to the fact that the legal basis for such a claim did not exist until the cases of *United States* v. *Wade*, 388 U. S. 218, and *Gilbert* v. *California*, 388 U. S. 263, were decided on June 12, 1967. By its decision in *Stovall* v. *Denno*, 388 U. S. 293, also decided on the same date, the same court held (at 296) that "*Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date."

In the *Stovall* case the court first concluded (at 300)

"that the *Wade* and *Gilbert* rules should not be made retroactive," and then continued (at 301–302) : "We turn now to the question whether petitioner [Stovall], although not entitled to the application of *Wade* and *Gilbert* to his case, is entitled to relief on his claim that in any event the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.  This is a recognized ground of attack upon a conviction independent of any right to counsel claim."  The defendant now makes precisely the same claim and bases it entirely on the *Stovall* decision.[2]

Despite the fact that the now disputed identification evidence was admitted without objection or exception by the defendant, he has now had three opportunities through counsel to raise and argue the propriety of the evidence.  At the conclusion of the cross-examination of the first of the three witnesses to identify the defendant in court, an associate of the defendant's trial counsel sought permission to move and argue orally to strike the testimony.  The judge refused to recognize him because he had no appear-

---

[2] The defendant places this claim before us on the basis of an exception to the denial of his motion for a new trial.  Ordinarily we do not permit the use of exceptions to the denial of such a motion as the vehicle by which to bring to us for decision alleged errors of law which could have been raised at the trial and brought up on direct appeal.  Such questions "cannot become the ground of a subsequent motion for new trial, unless the judge sees fit in his discretion to reconsider the matters involved.  *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24.  *Commonwealth* v. *McKnight*, 289 Mass. 530, 543–544 [cert. dism. sub nom.  *McKnight* v. *Massachusetts*, 296 U. S. 660]. *Commonwealth* v. *Galvin*, 323 Mass. 205, 220.  But in this instance the judge passed . . . [upon the questions] and has allowed . . . [a bill] of exceptions founded upon them.  We think that he exercised his discretion in favor of considering them, as he might well do in the circumstances.  We are further of opinion that this course has preserved for our consideration the questions of law as to which exceptions have been duly saved. . . .  We therefore deal with all substantial questions of law raised by exceptions in connection with the motions for new trial and argued in this court."  *Commonwealth* v. *Blondin*, 324 Mass. 564, 567, cert. den. sub nom.  *Blondin* v. *Massachusetts*, 339 U. S. 984.  The review thus afforded the defendant on this claim is as full a review as could have been obtained if his counsel had perfected an original appeal after judgment of conviction and sentence.  See *Commonwealth* v. *Pratt*, 360 Mass. 708, 712, where appellate review was made available by a report under G. L. c. 278, § 30.

ance on record, but stated that he would hear trial counsel on the matter. At a lobby conference, trial counsel stated that he did not then wish to be heard on the matter. At the close of the Commonwealth's case the defendant filed a written motion seeking in part to strike the identification evidence. After hearing it was denied and the defendant excepted. At the hearing on his motion for a new trial the defendant, then, as now, represented by a lawyer from the Massachusetts Defenders Committee, had his third opportunity to be heard on the same issue. At the hearing on this motion the defendant offered no new evidence, but chose instead to rely on the transcript of the original trial proceedings.

After the hearing on the motion for a new trial the trial judge made detailed findings about the opportunity of the three identification witnesses to observe the defendant during the robbery. He reviewed the evidence concerning the movements and conduct of each of the two robbers, one of whom was identified as the defendant, and their positions with reference to each of the three witnesses. He found in part that "[t]he robbery lasted approximately twenty minutes. . . . At various times during this period, all three employees testified that they came within several feet of the felons, and had a clear unobstructed view of each one's face." For these and all other subsidiary findings the judge cited the transcript pages containing the testimony upon which they were based. The judge concluded with the following general finding: "The court finds and rules that while the so-called 'show-up' technique employed by the police in this instance is not to be commended, the clear and convincing evidence satisfies the court beyond a reasonable doubt that the in-court identifications were based upon observations of the suspects, and were not tainted by the pretrial confrontations."

In ruling that the in-court identifications were not tainted by the pre-trial confrontations the judge impliedly found that the confrontations were not "so impermissibly suggestive as to give rise to a very substantial

likelihood of irreparable misidentification." *Simmons* v. *United States,* 390 U. S. 377, 384. However, his statement that the procedure followed "is not to be commended" implied a finding that the procdure was "impermissibly suggestive" to some degree. In light of the defendant's right under the due process clause of the Fourteenth Amendment not to have a court room identification witness subjected to an impermissibly suggestive pre-trial identification procedure, the next question to be considered was whether the in-court identification by the three witnesses "had an origin or source 'independent' of the impermissible confrontations at the police station [and at the District Court] and which survived those confrontations." *Cooper* v. *Picard,* 316 F. Supp. 856, 861–862 (D. Mass.). The judge expressly found against the defendant on both aspects of this question as indicated from the language quoted above from his findings, rulings and order on the motion for a new trial. A large part of the defendant's argument is devoted to pointing out evidence tending to permit findings of fact contrary to those made by the judge. Such an argument misconstrues the function of this court on appellate review. The weight and credibility to be accorded to evidence, particularly oral testimony, is to be decided by the trial judge who hears the witnesses, not by this court. To the extent that the judge's decision involves such findings of fact, his findings are supported by evidence in the transcript which we have examined for that purpose. To the extent that his general conclusion is based upon his subsidiary findings, it is fully supported thereby.

It is apparent from the judge's findings, rulings and order that he was aware of, and applied the proper test to be applied in these situations. That test is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun* v. *United States,* 371 U. S. 471, 488. *United States* v. *Wade,* 388 U. S. 218, 241. The judge in

effect decided that despite any impropriety in the police station and District Court "show-ups," the in-court identifications "were clearly and convincingly shown to have a source independent therefrom." *Cooper* v. *Picard, supra* p. 864. *Allen* v. *Moore,* 453 F. 2d 970 (1st Cir.). On the facts of this case we hold that there was no error in the admission of the disputed identification evidence. It is thus unnecessary for us to consider the question whether its admission was harmless or prejudicial error within the meaning of *Chapman* v. *California,* 386 U. S. 18, 24. Cf. *Commonwealth* v. *Guillory,* 356 Mass. 591, 592–594; *Commonwealth* v. *Kazonis,* 356 Mass. 649, 651–653.

2. The second ground for the defendant's motion for a new trial is the alleged incompetence of his trial counsel which he claims in effect deprived him of his right to effective assistance of counsel. In this regard the judge also made detailed findings of subsidiary facts after which he concluded: "The court finds and rules that . . . [trial counsel's] conduct, viewed in the total context of the trial, did not deprive defendant of any constitutional right." The findings of facts are supported by evidence in the transcript, and they support the general conclusion which the judge reached on the basis thereof. Although what we have said is sufficient to dispose of this issue against the defendant, we shall discuss it further because of the increasing frequency with which successor counsel are advancing claims of the incompetency of their predecessors.

The claim of incompetence of trial counsel is based in very large measure on what he did or did not do with reference to the in-court identifications of the defendant by the three persons present at the alleged robbery. Trial counsel made no objection to the evidence when it was offered. He subjected each of the three identifying witnesses to lengthy cross-examination, and after all three had testified he moved to strike their in-court identifications. The defendant's appeal counsel appears to argue that because trial counsel did not make a pre-trial

motion to suppress this evidence and did not request a voir dire hearing to determine its admissibility he was incompetent. We do not agree with this argument. It fails to take into account the responsibility of trial counsel who is "on location" for making appropriate decisions on trial strategy as the occasion for them arises without being subjected to the label of incompetence by someone attempting to second guess him from the vantage point of hindsight. We need not discuss this point further because the defendant has suffered no harm from his trial counsel's performance in this regard. In reviewing the denial of his motion for a new trial we have considered this point as fully as though trial counsel had done all which appeal counsel thinks he should have done. In either case the result would be the same.

A second argument made in support of the claim of incompetence of trial counsel is based on his alleged "vacillation" on whether the defendant should testify in his own behalf. It appears from the transcript that trial counsel consistently advised the defendant not to take the stand, and that the defendant initially accepted the advice but later changed his mind on one or more occasions. Ultimately he did testify, and he was impeached by proof of a number of prior convictions of crimes including several instances of assault and battery on police officers, several motor vehicle offences, one larceny from the person and one armed robbery for which he had been committed to the Massachusetts Correctional Institution at Walpole only four years before the present offences. The record does not support appeal counsel's claim of vacillation by trial counsel on whether the defendant would testify.

Appeal counsel cites two other occurrences as indicative of incompetence of trial counsel. The first occurrence related to two suede jackets, one found some distance from the scene of the robbery, and the other owned by the defendant. Both were introduced in evidence. The second occurrence related to a statement made by a court officer when the defendant kissed his

wife as he was leaving the court room. The judge promptly questioned the jurors and was satisfied that they had not heard the remark. Nothing in connection with these occurrences indicates that the defendant's trial counsel was incompetent.

Although claims of incompetence of counsel may be more frequent now than formerly, they have received the attention of this court for many years. Almost fifty years ago our decision in *Commonwealth* v. *Dascalakis,* 246 Mass. 12, contained the following observations (pp. 26–27) which are equally applicable today: "Doubtless evidence was admitted in examination of witnesses by the counsel for the defendant which could not have been introduced against his objection. That by itself alone is a matter of slight consequence. It is a not infrequent occurrence in the trial of causes, and even happens in criminal cases, that incompetent, immaterial and irrelevant evidence goes in without objection. Various motives may induce such conduct by trial counsel. In the main it is done for the supposed advantage of the client to obtain evidence which directly or indirectly may operate in his behalf. Disappointment in the substance of evidence thus elicited, or misapprehension in its expected effect, is neither error in law nor incompetence or negligence in fact. It is difficult to reproduce on a printed page the atmosphere of a trial. The situation confronting an attorney during the examination of a witness, including information conveyed in advance from various sources, anticipation concerning answers to be given, and judgment as to results likely to follow, is generally fraught with difficulty. Methods differ. There are divergent theories as to the wisdom of insistent conformity to every technical rule of evidence. Even tenable objections sometimes are not taken in the belief that an ultimate favorable verdict is more likely without them. . . . Experience, capacity, industry, alertness, faithfulness, learning and character make great differences in the efficiency of different members of the bar in the trial of cases. Perfection cannot be demanded even if a standard of perfection

could be formulated. All cannot be held to the same degree of excellence. Criticism after an adverse event is easy." For a more recent discussion of this subject, see *Commonwealth* v. *Underwood*, 358 Mass. 506, 509–510, and *Commonwealth* v. *Bernier*, 359 Mass. 13, 16–19, and cases cited therein.

There was no error in the judge's denial of the defendant's motion for a new trial.

*Exceptions overruled.*