COMMONWEALTH *vs.* ROBERT SCHLIEFF.

Bristol.    September 15, 1977. — November 9, 1977.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Practice, Criminal,* Assistance of counsel. *Search and Seizure. Identification. Constitutional Law,* Assistance of counsel, Identification.

At a criminal trial, the defense counsel's failure to file pre-trial motions to suppress evidence seized from the defendant, an admission by the defendant, and in-court identifications of the defendant by the victims and his failure to use the probation and criminal records of one of the victims to impeach his testimony did not constitute ineffective assistance of counsel where it appeared that the pre-trial motions would have been unlikely to succeed and where the value of the records for impeachment purposes was questionable and their admissibility doubtful. [667-672]

At the trial of several indictments, the defendant was not prejudiced by the judge's failure to dismiss the indictment for mayhem where no evidence was admitted on that indictment which could not also have been admitted on the indictment for assault and battery with a dangerous weapon. [672]

---

INDICTMENTS found and returned in the Superior Court on June 11, 1974.

The cases were tried before *Prince, J.,* and motions for a new trial were heard by him.

*Angelo P. Catanzaro* for the defendant.

*Francis M. O'Boy,* Assistant District Attorney, for the Commonwealth.

KEVILLE, J.    The defendant appeals pursuant to G. L. c. 278, §§ 33A-33G, from convictions on six indictments including those for armed burglary at the dwelling of Mr. and Mrs. Kenneth St. George and assaults on their persons.

When at about 10:00 P.M. on January 17, 1974, Mrs. St. George opened the rear door of their dwelling in the town of Easton, she was confronted by two men wearing black leather jackets, hats pulled down to their eyebrows and carrying handguns. She ran screaming into the living room where her husband was asleep on the couch. That area was well lighted. The men followed her there and ordered the St. Georges to get on the floor face down. Mrs. St. George responded immediately, but Mr. St. George did not comply until ordered to do so a second time.

Once on the floor, Mr. St. George, for a period of three or four minutes, kept his face to one side in such a position as to be able to observe the intruders while he responded to the questions of one of them, later identified as the defendant Schlieff, concerning the location of money, "dope" and a firearm. The assailant who had asked the questions kicked Mr. St. George on the face and on other parts of his body with resulting serious injury to one of his eyes. The intruders remained in the house for about ten minutes and then fled.

Shortly after the invasion of their home, the St. Georges, upon being shown a group of photographs by the police, selected one of them as being that of a man who they thought looked like one of their assailants. However, when they viewed the subject in person, they concluded that they had been mistaken in their photographic identifications. Subse-

quently the St. Georges viewed a large number of photographs on several occasions and identified Schlieff's codefendant.[1]

On March 24, 1974, approximately two months after the assaults, the St. Georges each selected a photograph of Schlieff from an array of eleven shown to them at a police station. Early in April, following those photographic identifications, the St. Georges were called by the police to a District Court. While there, they identified Schlieff as he was standing among a group of about ten persons in the hallway of the court house.

About a week following the St. Georges' identification of Schlieff's photograph, the police went to his apartment with a warrant for his arrest. There was evidence that after Schlieff was informed that he was being placed under arrest and apprised of his constitutional rights, he admitted to a police officer that a black leather jacket, which the police observed on the back of a chair in the room, belonged to him.

The defendant claims that he is entitled to a new trial primarily because his counsel was inadequate. In support of that contention he argues counsel's failure to file pretrial motions to suppress (a) the jacket allegedly worn by the defendant during the commission of these crimes, (b) an admission by the defendant to the police of his ownership of the jacket, and (c) in-court identifications of the defendant by the victims. The defendant also points to trial counsel's failure to request probation and criminal records of Mr. St. George as further evidence of ineffective assistance of counsel.

The standard for evaluation of effectiveness of counsel is clear: "[W]hat is required in the actual process of decision of claims of ineffective assistance of counsel, and what our own decisions have sought to afford, is a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incom-

---

[1] An appeal by the codefendant was decided by this court in *Commonwealth* v. *Coburn, post*, 781 (1977).

petency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Cross,* 4 Mass. App. Ct. 54, 56-57 (1976), and cases cited. The question of effectiveness of counsel is a practical, not a theoretical, one. Failure to file pre-trial motions to suppress does not, ipso facto, constitute inadequate representation, for counsel is not required to file motions or assert defenses of little or no value to his client. *Id.* at 57, 58. *Saferian, supra* at 99. *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 14 (1973).

Trial counsel is not to be judged as ineffective simply because of retrospective differences of opinion about judgments formed or tactics used by him during trial. *Commonwealth* v. *Bernier,* 359 Mass. 13, 19 (1971). *Commonwealth* v. *McGrath,* 361 Mass. 431, 439-440 (1972). *Delle Chiaie* v. *Commonwealth,* 367 Mass. 527, 536 (1975).

An attorney may decide, as part of trial strategy, to forgo voir dire and pre-trial motions, and to develop his defenses through cross-examination. *Commonwealth* v. *McGrath, supra* at 438-439. *Commonwealth* v. *Scott,* 2 Mass. App. Ct. 763, 766, 767 (1975). Here trial counsel employed the tactic of attacking the credibility of the Commonwealth's witnesses under cross-examination rather than relying upon motions to suppress which were unlikely to succeed. He also called several witnesses through whom he sought to contradict the Commonwealth's witnesses and to develop an alibi. Such tactical decisions are not indicative of ineffective assistance of counsel. *Commonwealth* v. *Bernier, supra* at 17. *Commonwealth* v. *McGrath, supra* at 439.[2]

---

[2] At a hearing on a motion for a new trial in which ineffective assistance of counsel is claimed, it is proper for new defense counsel to call for the testimony of trial counsel to reveal the latter's rationale in his management of the defendant's case during trial. See *Commonwealth* v. *Kozerski,* 1 Mass. App. Ct. 106, 111-112 (1973), *S.C.* 364

On the motion for a new trial, it was the defendant's burden to prove those facts which were not agreed upon or apparent on the face of the record. The question of credibility at the hearing on the motion was a matter for decision by the judge. *Commonwealth* v. *Bernier, supra* at 15, 16. *Commonwealth* v. *McGrath, supra* at 437. We conclude that his denial of the motion for a new trial is supported by the record, on the strength of which we think it unlikely that motions to suppress would have been successful, and that failure to file such motions did not demonstrate inadequacy of counsel. See *Commonwealth* v. *Cross, supra.*

Counsel's failure to move to suppress the leather jacket seized in Schlieff's apartment was not indicative of inadequate representation. The police entered the apartment with a warrant for Schlieff's arrest. The jacket hung on the back of a chair in the room where he was placed under arrest. When police lawfully enter a dwelling, they may seize objects in plain view if they have reasonable cause to believe that a nexus exists between the object seized and criminal behavior. *Commonwealth* v. *Haefeli,* 361 Mass. 271, 281 (1972). *Commonwealth* v. *Ross,* 361 Mass. 665, 681 (1972), judgment vacated on other grounds, 410 U. S. 901, aff'd on rehearing, 363 Mass. 665, cert. denied, 414 U. S. 1080 (1973). *Harris* v. *United States,* 390 U. S. 234, 236 (1968). In the circumstances, the police were not obliged to ignore this evidence which was freely observed by them in the course of their execution of the warrant for the defendant's arrest. See *United States* v. *Thweatt,* 433 F. 2d 1226, 1231 (D.C. Cir. 1970).

Similarly, trial counsel's failure to move to suppress the defendant's admission of ownership of the jacket did not demonstrate ineffective assistance of counsel. The judge could have believed the arresting officer's testimony that he advised the defendant of his constitutional rights before the defendant's admission that the jacket was his; and thus

Mass. 833 (1974); *Commonwealth* v. *Cross,* 4 Mass. App. Ct. 54, 57 (1976). Apparently in the instant case trial counsel was not called to testify.

the judge could have found that a motion to suppress the defendant's admission would have been futile.

The defendant has failed to establish that there was substance to his claim that the in-court identifications by the victims should have been suppressed. Such identifications will be suppressed if the defendant can show that pre-trial identification procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 725 (1973). *Simmons* v. *United States*, 390 U. S. 377, 384 (1968). See now *Manson* v. *Brathwaite*, 432 U. S. 98, 114-116 (1977). However, even if pre-trial identification procedures were impermissibly suggestive, the in-court identifications will be allowed if they are based upon adequate observation, independent of those procedures. *Commonwealth* v. *Roberts*, 362 Mass. 357, 364 (1972). *Commonwealth* v. *Botelho*, 369 Mass. 860, 865, 868 (1976). *Cooper* v. *Picard*, 428 F. 2d 1351, 1353-1354 (1st Cir. 1970).

The defendant has the burden of establishing that pretrial identification procedures were suggestive. *Commonwealth* v. *Botelho, supra* at 867. *Commonwealth* v. *Underwood*, 3 Mass. App. Ct. 522, 533 (1975). The record here would support findings that each victim selected Schlieff's photograph from an array of photographs, and that the identification procedure was free of suggestiveness on the part of the police. The record would also support a finding that the confrontations between the victims and Schlieff in the hallway of the District Court were not impermissibly suggestive, and therefore does not support the defendant's claim that the victims' in-court identifications, based upon those earlier confrontations, should have been suppressed. The defendant's further contention that the confrontations were illegal because he was not then represented by counsel is without substance. Those confrontations were not of a character which would warrant an imposition of the exclusionary rule relied upon by the defendant. See *United States* v. *Wade*, 388 U. S. 218, 233-234 (1967); *Gilbert* v. *California*, 388 U. S. 263, 272-274 (1967). That exclusionary rule is inapplicable where, as here, for all that the rec-

ord shows, the confrontation was accidental and not arranged by the police. *Commonwealth* v. *D'Ambra,* 357 Mass. 260, 263 (1970). *Commonwealth* v. *Hervey,* 1 Mass. App. Ct. 727, 729 (1974).

Even if the judge had found that the pre-trial identification procedures were impermissibly suggestive, the evidence would support a finding that the in-court identifications were based upon independent observations by the victims during the commission of the crimes. The witnesses' ability to observe the defendant at the time of the crimes is a most important factor in determining whether an in-court identification is independent of suggestive pre-trial identification procedures. *Commonwealth* v. *Ross,* 361 Mass. at 671-682. *Commonwealth* v. *Underwood,* 3 Mass. App. Ct. 522, 534 (1975). The St. Georges observed the intruders in a well-lighted area under conditions likely to impress the defendant's features upon their minds. This observation was sufficient to support a determination by the judge that their in-court identifications were independent of any suggestive pre-trial identification procedure. Compare *Commonwealth* v. *Cefalo,* 357 Mass. 255, 257-258 (1970); *Commonwealth* v. *Hogg,* 4 Mass. App. Ct. 225, 229 (1976).

With respect to the defendant's claim that trial counsel's failure to request the probation and criminal records of Mr. St. George was indicative of ineffective assistance of counsel, counsel for the codefendant did in fact request the records and they were produced during the trial. Counsel for the codefendant declined for tactical reasons to use them. The judge could have found that the defendant's trial counsel had made a similar decision. The record shows only that two untried indictments of the witness Kenneth St. George were pending in an adjoining county. The value of such records for impeachment purposes was questionable and their admissibility doubtful.[3] Here again the record sup-

---

[3] The indictments had not ripened into convictions admissible under G. L. c. 233, § 21. The defendant asserts that he had a constitutional right to use the records for impeachment purposes, relying upon *Davis* v. *Alaska,* 415 U. S. 308, 315-318 (1974), and *Commonwealth*

ports an implicit finding by the judge that the defendant was not deprived of a substantial defense.

Finally, we agree that Indictment No. 51528 should have been dismissed for the reason stated in the disposition of a similar indictment for mayhem or assault with intent to maim in the case of *Commonwealth* v. *Coburn, post,* 781, 783 (1977). With respect to the defendant's additional argument addressed to that indictment, since no evidence was admitted thereon which could not also have been admitted on Indictment No. 48469 for assault and battery with a "dangerous weapon, to wit: his boot" (see *Commonwealth* v. *D'Agostino,* 344 Mass. 276, 279, cert. denied, 371 U. S. 852 [1962]; *Commonwealth* v. *McKenzie,* 3 Mass. App. Ct. 785 [1975]), it follows that the judge's failure to dismiss the mayhem indictment was not prejudicial to the defendant in the respect now claimed. We are satisfied that there was no error in the denial of the defendant's motion for a new trial.

The judgment on Indictment No. 51528 is reversed, the verdict on that indictment is set aside, and the indictment is to be dismissed. The judgments on all other indictments are affirmed.

*So ordered.*

---

v. *Ferrara,* 368 Mass. 182, 187, 189 (1975). However both *Davis* and *Ferrara* involved records of adjudications of guilt which indicated the strong possibility that the witnesses were cooperating with the prosecution in exchange for leniency. *Id.* Here there is no such indication. Nothing in the record demonstrates that the witness Kenneth St. George, a victim of the crime, was, through his testimony, seeking to curry favor with the prosecution. Contrast *Commonwealth* v. *Graziano,* 368 Mass. 325, 330-331 (1975). See also *Commonwealth* v. *DiRoma, post,* 853 (1977).