LYRA F. LEONARD *vs.* ARTHUR W. BOLTON.

Bristol.   October 29, 1890. — March 31, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Bastardy Complaint — Poor Prisoner — Charges of Fraud — " Creditor."*

If one who has been convicted under the bastardy act, and committed to prison under the Pub. Sts. c. 85, § 15, seeks to obtain his discharge upon taking the poor debtor's oath, as authorized by § 20, he is liable to have charges of fraud filed against him, as in the case of poor debtors generally.

A cause of action under the bastardy act accrues at the time when the complaint may first be made.

A woman entitled to prosecute a complaint under the bastardy act is to be deemed a creditor of the man against whom she is entitled to prosecute it; and a conveyance made by him after she is entitled to prosecute such complaint, if made with the design of enabling himself to avoid payment of the sum which the court may order him to pay to her, must be deemed to have been made with a design to defraud his creditors.

CHARGES OF FRAUD, filed August 8, 1889, by the complainant in a bastardy process against the respondent, who, after being adjudged the father of the child, was committed to jail on April 10, 1889, for a failure to contribute to its support. The charges which were made upon his application to take the oath for the relief of poor prisoners were, that the respondent, "since the cause of action accrued" to the complainant, had "fraudulently conveyed, concealed, and otherwise disposed of a part of his estate, with a design to secure the same to his own use and defraud his creditors, namely, by" various conveyances of real and personal estate in July, 1887. Trial in the Superior Court, on appeal, before *Sherman,* J., who, after a verdict of guilty, reported the case for the determination of this court, in substance as follows.

There was evidence of the following facts. The child was begotten on or about December 1, 1886, and was born on August 23, 1887. The complaint was filed on September 13, 1887, and the supplementary complaint on April 30, 1888, and the respondent was duly found guilty of being the father of the child at the March sitting of 1889 of the Superior Court, and an order of affiliation made on April 10, 1889. The respondent had been threatened by the complainant with a prosecution under the bastardy act on or before July 23, 1887. The conveyances mentioned in the charges of fraud were made on July 28, 29, and 30, 1887, successively. To the introduction of evidence of these transfers of property the respondent objected, upon the ground that at the times they were made no cause of action had accrued to the complainant within the meaning of the statute, and argued that the action would not accrue until the child was born alive, and asked the judge so to rule. The judge admitted the evidence and refused so to rule, but ruled that the action accrued prior to the conveyances. The respondent also requested the judge to rule that at the times of the conveyances the complainant was not a creditor within the meaning of the statute; but the judge declined so to rule.

If the rulings requested should have been given, then the verdict was to be set aside; otherwise, the verdict was to stand.

The case was argued at the bar in October, 1890, and afterwards, in February, 1891, was submitted on the briefs to all the judges.

*F. H. Williams*, for the complainant.

*L. E. White*, for the respondent.

C. ALLEN, J.  Under the statutes relating to the mainte-
nance of bastard children, "Whoever has been imprisoned ninety
days for having failed to comply with an order of the court, as
provided in this chapter, shall have the benefit of the laws for
the relief of poor prisoners committed on execution," upon giv-
ing certain notices.  Pub. Sts. c. 85, § 20.  This section places
such a person, in this respect, in the position of a poor debtor;
he is entitled to avail himself of the provisions in behalf of poor
debtors.  That is to say, he may apply to take the poor debtor's
oath.  No further provisions being made in chapter 85 as to the
terms and conditions upon which he may take this oath, it must
be considered that he is to do so upon the same terms and condi-
tions as a poor prisoner committed on execution may do it.  But
when a poor prisoner committed on execution makes application
to take the poor debtor's oath, he is liable, as an incident of the
proceeding, to be met by certain charges of fraud, which if
established by proof will defeat his application, and also subject
him to a further sentence.  Pub. Sts. c. 162, § 52.  Among these
charges is the following: "That, since the debt was contracted
or the cause of action accrued, the debtor has fraudulently con-
veyed, concealed, or otherwise disposed of some part of his
estate, with a design to secure the same to his own use or
defraud his creditors."  Pub. Sts. c. 162, § 17, cl. 2, and § 49.
The poor debtor's oath, and the magistrate's certificate after ad-
ministering it, both negative the existence of the facts stated in
the above charge.  §§ 39, 40.  These charges of fraud are inci-
dental to the application of the debtor to obtain his discharge;
and it has sometimes been said that they are filed by way of
answer or plea in bar to the application.  They cannot be filed
as a distinct and independent process.  *Everett* v. *Henderson*,
150 Mass. 411.  It has heretofore been determined that, if a
husband who has been arrested on an execution issued for ali-
mony in a divorce suit applies to take the poor debtor's oath,
his wife may meet such application by filing charges of fraud
against him.  *Foster* v. *Foster*, 130 Mass. 189.  If one who has
been convicted under the bastardy act, and committed to prison
under the Pub. Sts. c. 85, § 15, seeks to obtain his discharge
upon taking the poor debtor's oath, as authorized in § 20, we find

nothing in the statutes, and see nothing in the nature of the case, to show that he should stand on any better ground. He may have the benefit of the laws for the relief of poor prisoners committed on execution, with their attendant incidents, one of which is that he is liable to be met with charges of fraud. *Parker* v. *Page*, 4 Gray, 533. *Stockwell* v. *Silloway*, 100 Mass. 287. *Anderson* v. *Edwards*, 123 Mass. 273. *Morse* v. *Dayton*, 125 Mass. 47. *Everett* v. *Henderson*, 150 Mass. 411.

The defendant, however, contends that the cause of action in the present case had not accrued at the time when his conveyances which are found to have been fraudulent were made. The child was begotten about December 1, 1886, and born on August 23, 1887. The conveyances were made on July 28, 29, and 30, 1887. On July 23, 1887, and previously thereto, the defendant had been threatened with a prosecution under the bastardy act, but no complaint was actually made till September 13, 1887, which was after the birth of the child. By virtue of the statute, the cause of action accrues " when a woman . . . is pregnant with a child which if born alive may be a bastard." She may then make a complaint, a warrant for the arrest of the putative father may then be issued, and he may then be arrested and held to answer. Pub. Sts. c. 85, §§ 1, 9. The original complaint is the institution of the proceedings upon the cause of action. It is liable, however, to be defeated, if the child is not born alive. *Schramm* v. *Stephan*, 133 Mass. 559. The proceeding is a peculiar one, specially authorized by statute, and originally could be instituted only by the mother, though now it may also be done by certain public officers, and it is in part for her benefit. The cause of action must be deemed to accrue at the time when the complaint may first be made.

The defendant further contends that the complainant, at the time of the conveyances made by him, was not his creditor within the meaning of the statute, and that, as he had no other creditors at the time, it cannot be said that he conveyed away his property with design to defraud his creditors. But if he designed to defraud future creditors, that is within the meaning of the statute. Subsequent creditors may avoid a conveyance made with an express intent to defraud them. *Plimpton* v. *Goodell*, 143 Mass. 365. *Winchester* v. *Charter*, 12 Allen, 606. In *Woodcock* v. *Walker*, 14 Mass. 386, it was held that the only

mode of enforcing performance of the order of the court for the payment of a certain weekly sum towards the maintenance of a bastard child, and for the giving of a bond to secure such payments, was to commit the defendant to prison until he should comply. This decision was made before the enactment of the Rev. Sts. c. 82, § 36, giving to the Court of Common Pleas a power, similar to that which had long existed in the Supreme Judicial Court, (St. 1782, c. 9, § 2,) to issue all writs and processes that might be necessary or proper to carry into effect the powers granted to them; and it may be open to question whether that decision is now applicable. But even before the enactment of the Rev. Sts., this court, in *Damon* v. *Bryant*, 2 Pick. 411, said that it was inclined to think that a woman who was entitled to maintain a complaint under the bastardy act might contest a conveyance made by the putative father as fraudulent. By the St. of 1825, c. 173, it was first enacted that one who had been imprisoned for ninety days under the bastardy act should be entitled to the benefit of the act for the relief of poor prisoners who are committed on execution for debt; and it was therein provided that the town or the mother should, at all times after such prisoner should have been liberated from prison by taking the oath, have a right to recover by action of debt any money which ought to have been paid to them respectively by said prisoner, in pursuance of the order of court. This provision in substance has remained in force ever since. Rev. Sts. c. 49, § 6. Gen. Sts. c. 72, § 12. Pub. Sts. c. 85, § 21. After his discharge on taking the oath, she is a creditor to all intents and purposes. Before his discharge, and after the judgment of the court, she is a creditor in the sense that she is entitled to receive from him money which he is under an obligation established by record to pay, and she has at least the remedy of enforcing this obligation by committing him to prison. She is also entitled to costs, for which she may take out an execution, though costs are not to be included in his bond. *Young* v. *Makepeace*, 103 Mass. 50, 57, and 108 Mass. 233, 236.

On the whole, it seems to us clear, that, since he is entitled to make application to take the poor debtor's oath in order to obtain his discharge from imprisonment upon her claim, she must be deemed to be a creditor within the meaning of the statute providing for the filing of charges of fraud; and that, if

he made the conveyances with the design of enabling himself to avoid payment of the sum which the court might order him to pay to her on the prosecution which he had reason to expect that she would institute, this must be deemed to have been done with a design to defraud creditors.

According to the terms of the report, the entry must be,

*Verdict to stand.*