**STATE OF RHODE ISLAND**
vs.
Jorge MONTIJO[1]

District Court Department
Appellate Division, Southern District
Trial Court of the
Commonwealth of Massachusetts

September 17, 1980

[1]The Petitioner is Jenny Nater, the former wife of the respondent.

No Brief nor Argument for petitioner Daniel J. Triggs, Jr. for defendant.

Present: Rider, J., Welsh, J., and Black, J.

**WELSH, J.** This is a petition under the Uniform Reciprocal Enforcement of Support Act, G.L. c. 273A.

It is alleged that the petitioner is the wife of the respondent, the parties having been married in the Commonwealth of Puerto Rico on or about June 7, 1967. It is further alleged that the respondent is the father of two minor children named in the petition and that he has refused and neglected to provide fair and reasonable support to the petitioner and to the two minor children of the parties since 1970.

The respondent filed an answer[2] denying any obligation to support one of the children because the child was born prior to the marriage and asserting that he suffered a disabling industrial accident and has no present ability to support the other child

---

[2]No answer is required in such proceedings. G.L. c. 273A, §9. See: M    vs. W    352 Mass. 704, 708 (1967). The Rules of Civil Procedure; Dist./Mun. Cts. R. Civ. P. 81(a), apply to civil proceedings relating to cases traditionally considered tort, contract or replevin, except small claims actions.

named in the petition.

At the hearing, the petition together with appropriate supporting affidavits were presented. Section 9 of Chapter 273A provides, **inter alia,** that the verified statement of the petitioner contained in the petition shall constitute prima facie evidence on the issues of the existence of the duty of support, of the failure to provide such support and of the fact of the unreasonableness of such failure. See: **Commonwealth v. Bird,** 264 Mass. 485, 489 (1928). Unlike a presumption which becomes inoperative when evidence to the contrary is introduced, prima facie evidence remains as evidence in the case to be weighed by the finder of fact notwithstanding the presence of contrary evidence. **Ferreira v. Franco,** 273 Mass. 272,274 (1930). Leach & Liacos, **Handbook of Massachusetts Evidence** p. 56 (4th ed. 1967). But see **Kirby v. Kirby,** 338. Mass. 263, 269 (1959). The duty of support for the child is inferable from the existence of the marriage between the petitioner and respondent and from the birth of the child born during the existence of the marriage relationship. However, the duty of support as to the child born before the marriage must be made to appear either from the evidence or the documents whose contents are given the effect of prima facie evidence by statute. The report is silent on whether or not the respondent has either acknowledged as his own or been adjudicated the father of the older child named in the petition. In any event, the court made an order that the respondent pay the sum of $20.00 weekly for the support solely of the younger of the two children. Thus, the question of the older child's entitlement to an award of support is not before us.

The principal question which the report seeks to present is whether or not under the circumstances outlined below the court was warranted in entering an order compelling the respondent to pay weekly support of $20.00 for the younger child named in the petition.

Because of certain difficulties with the report and for other reasons outlined below, we remand the case to the trial court with instructions to supplement the report and with leave for the taking of additional

evidence, in its discretion.

There was evidence contained in the report which would tend to show the following:

The respondent is presently totally disabled and is ineligible to receive disability assistance from the Social Security Administration. He receives no public assistance from any source. Sometime prior to April 12, 1979, he had been employed under the CETA Program by the City of Taunton. He suffered a disabling industrial accident which rendered him totally incapacitated to work. On April 12, 1979, the Industrial Accident Board approved a lump sum settlement of $20,000.00. The settlement provided that the respondent receive $5,250.00.[3] The sum of $10,000.00 was disbursed to the respondent's present wife (not the petitioner) in release of her inchoate rights. The respondent paid various bills and now claims to have none of the money that was paid directly to him.

The court found that the settlement was fraudulent as against the rights of the minor child, apparently based upon its assessment that the disbursement out of the award to the respondent's present wife was disproportionately large. The court further found that the respondent was totally in control of the amount paid to his present wife and that said sum was, in effect, a payment to himself, since he resides with his spouse and controls the expenditure of these sums.

1. The respondent did not file any requests for rulings of law. See, **Souza v. Kokoszka**, 36 Mass. App. Dec. 199 (1965). Accordingly, we treat this as an appeal from a general finding. **Id.** at p. 202; contrast: **Kirby v. Kirby**, 15 Mass. App. Dec. 116, 119 (1958), and cases cited therein. Although a general finding would, in itself, import a finding of all subsidiary facts necessary to support it, **Moss v. Old Colony Trust Co.**, 246 Mass. 139, 143 (1923), and would be conclusive if there is any evidence to support it, **id,** at p. 143, where the judge

apparently did make certain voluntary subsidiary findings of fact upon which he arrived at his general findings, we are of the opinion that the cause ought to be remanded with the instruction that the court set forth separately and in full all the subsidiary findings in the revised report. It would aid us materially if the judge saw fit to include a summary of any additional evidence which might be adduced at a rehearing if ordered in the trial court's discretion, bearing upon the question of fraudulent conduct in procuring the award in such a way as to attempt to insulate a substantial part of it from claims of this sort, and on the matter of control by the respondent of the expenditure of the fund by his present wife.

We are not unmindful that evidence of such facts is, for the most part, circumstantial and that considerable deference is to be accorded on our part to the prerogatives of the trial judge as a finder of fact and as regards credibility of oral testimony.

A man without employment or income may be still adjudged guilty of failure to support his wife and children if the court finds that it is within his power to take action to carry out his obligation, but declines to do so. **Commonwealth v. Pouliot**, 292 Mass. 229, 231-232 (1935).

2. Appellant has sought to include with the report a document purporting to be a transcript of the proceedings in the trial court. The "transcript" appears to have been made up by a person who audited a tape recording of the proceeding in the district court. The transcriber acknowledges that there were a number of "inaudibles" in the tape. The "transcript" is not certified in the manner prescribed by G.L. c. 233, sec. 80[4]

The appeal procedures for civil cases in the district courts more closely resemble the former practice of appellate review by bill of exceptions than by appeal pursuant to the Rules of Appellate Procedure. 365 Mass. 844. The present Rules of Appellate Procedure are the practice of review by

---

[3]Further disbursements directed by the Division of Industrial Accidents were $4,000.00 as counsel fees and $750.00 to the Department of Public Welfare for moneys advanced to the respondent for his own support.

[4]That statute does not, by its terms, apply to the district courts. However, the absence of certification by the transcriber is certainly a factor to be considered in this case.

appeal in the federal courts. For example, the request for report is comparable to the taking of an exception under the bill of exceptions procedure. Barton v. Cambridge, 318 Mass. 420, 423 (1945). The analogy to bills of exception has been alluded to in other contexts. See, Gallagher v. Atkins, 305 Mass. 261, 263 (1940); Mooney v. Jud's Home Insulation Co., Inc., 368 Mass. 809, 810 (1975).[5]

One of the cardinal principles governing appellate review by bills of exception is that the function of the appellate court is solely to decide questions of law properly raised in the bill of exceptions, and not to pass upon the weight of evidence. Flint v. Codman, 247 Mass. 463, 468 (1924); Atlantic Maritime Co. v. Gloucester, 228 Mass. 519, 522 (1917). The principle is applicable even though the evidence is reported in its entirety. Moss v. Old Colony Trust Co., 246 Mass. 139, 143 (1923).

The principles enunciated have been applied with at least equal vigor in the practice of review by appellate divisions of the district courts. Findings of fact are not reviewable when based wholly or in part upon oral evidence. MacDonald v. Adamian, 294 Mass. 187, 190 (1936); Bartley v. Phillips, 317 Mass. 35, 42 (1944). The sufficiency of evidence to warrant a general or subsidiary finding is not normally reviewable, in the absence of an appropriate request for ruling specifically directed to that issue. Reid v. Doherty, 273 Mass. 388, 389 (1930); Himelfarb v. Novadel Agene Corp., 305 Mass. 446, 449 (1940). The correctness of a finding is not reviewable, unless shown to be tainted by an erroneous application of the law. Deitrick v. Siegel, 313 Mass. 612, 613 (1943); Adamaitis v. Metropolitan Life Ins. Co., 295 Mass. 215, 221 (1936). Any alleged inconsistency between a ruling of law and a general finding adverse to the appellant must first be brought to the attention of the trial judge by way of a motion to correct the inconsistency or a motion for a new trial, as a condition precedent for appellate review. Kelsey v. Hampton Court

Hotel Co., 327 Mass. 150, 153 (1951); Vieira v. Balsamo, 328 Mass. 37, 39 (1951). This principle has been, on occasion, extended to apply to perceived inconsistencies between the general and special findings of the trial judge. Lane v. Smith, 57 Mass. App. Dec. 27, 29 (1975); Lowell Window Shade Co., v. Bernstein, 57 Mass. App. Dec. 170, 173-174 (1976).

Inclusion of a transcript as part of a bill of exceptions has been generally condemned by the Supreme Judicial Court. Cornell-Andrews, etc. Co. v. Boston & Prov. R.R., 215 Mass. 381, 387 (1913); Graustein, Petitioner, 305 Mass. 568, 569 (1940). The practice has also been denounced in appellate division cases. McCloskey v. R.H. Stearns Co., 22 Mass. App. 26, Dec. 30 (1961); Mealy v. Camuso, 30 Mass. App. Dec. 79 (1964). There are several cogent reasons for not allowing the practice. First, it tends to invite or at least tacitly sanctions the practice of allowing the appellant to shift the burden of ferreting out error from the aggrieved party to the appellate court. Commonwealth v. McGrath, 361 Mass. 431, 433 (1972). It is a blatant imposition upon an appellate court to require it to cull out prejudicial error from a large and undigested mass of material. Id. at p. 433; Hutnak v. Dargan, 2 Mass. App. 795, 825-826 (1974). Secondly, it tends to subvert the principle that appellate courts do not generally review findings of fact as such. The presence of a transcript would encourage, sub silentio, incursions by the reviewing court into the fact finding process, invite the weighing of evidence and the formulation of inferences of fact by appellate judges in a manner inconsistent with the intent of the present appellate review structure in district courts. The erosion of the authority of the trial judge as a fact finder and the usurpation of this function by the appellate division would offend the enabling statute,[6] See, Elliott v. Warwick Stores, Inc., 329 Mass. 406, 409 (1952); Loanes v. Gast, 216 Mass. 197, 199 (1913). Finally, the very purpose of the statute establishing review of civil cases in the appellate division is to provide an expeditious and inexpensive procedure to

---

[5]The analogy is not a perfect one. See, Sullivan v. Aussebel, 39 Mass. App. Dec. 222, 226 (1968).

[6]G.L. c. 231, §108.

review questions of law arising in the trial of such cases. **Cohen v. Berkowitz,** 215 Mass. 68, 71 (1913); **Buchannan v. Meisner,** 279 Mass. 457, 460 (1932). The expansion of the record so as to permit inclusion of a transcript would frustrate these purposes by increasing the expenses of the litigants and involving additional delay in the review process. We hold that the "transcript" is not properly before this court on appeal.

3. The business of fraudulent disposal or concealment by a parent of an asset so as to delay, defeat or hinder enforcement of the claims of a minor child for support is not without precedent in this commonwealth. The case of **Leonard v. Bolton,** 153 Mass. 428 (1891), is illustrative. Under the practice then in effect, the putative father of an illegitimate minor child was liable in a statutory civil action, rather bluntly labeled a "bastardy" action, brought by the mother for the support of said child and for related expenses of delivery, confinement, etc. Later, the practice was changed so as to afford the more effective methods of collection of support through the probation office by making the act of begetting an illegitimate child a misdemeanor. See, **Commonwealth v. Dornes,** 239 Mass. 592, 593-594 (1921). Though the nature of the process was criminal, it retained a number of its civil aspects, such as dismissal if the court determined that adequate provision was made by way of a settlement. One of the major difficulties with the civil action was in the method available for enforcement. The putative father could, after suffering a jail term of three months, if unable to secure bond for payment of an order, obtain his own release by taking the "poor debtors oath." Such oath would result in his release from jail and effectually liberated him from further liability to pay for the support of the child, all to the detriment of the child, the mother, and the public good. If it were proved the oath was taken under circumstances amounting to fraud, the defendant could be remanded to custody.

It was in this context that **Leonard v. Bolton,** 153 Mass. 428, supra, was decided. It was held that a conveyance by the putative father at a time after the woman was entitled to prosecute the action was to be deemed fraudulent. **Id.** at 432-433. Significantly, it was held that she had standing as would any creditor to show that the asset was fraudulently disposed of. That approach has been applied in the context of fraudulent conveyance by a husband seeking to hinder or delay his wife. **Jorden v. Ball,** 357 Mass. 468, 471 (1970). In the instant case, the lump sum settlement was approved on April 12, 1979. The petition for support was commenced in the Family Court of Rhode Island on January 26, 1979. The docket entries reflect that the petition and accompanying documents were filed in the Taunton Division on April 3, 1979. The order of notice issued on April 3, 1979, returnable May 21, 1979. A return of service on the order of notice was filed on April 25, 1979. It would appear that the claim might have been prosecuted at any time since 1970, when it is alleged the petitioner and respondent separated. The obligation on the part of respondent to provide reasonable support for his unemancipated minor children is a continuing one. **Commonwealth v. Dornes, supra,** at 595. The fact that neither the child nor the child's mother may have ever resided here is not germane. **Commonwealth v. Gross,** 324 Mass. 123, 125-126 (1949).

As regards the question of fraud, we think the judge might properly consider such matters as the proximity of the lump sum settlement and the pendency of the present proceeding. Other important factors would be facts and circumstances that would tend to show that the respondent or his attorney had the capacity as a practical matter to control or influence the manner in which the lump sum settlement was disbursed and whether or not he did in fact, exert such influence or control. Circumstances permitting the inference of connivance between respondent and his present wife would be significant. Against the fact that the lion's share went to the respondent's present wife, taken with other facts, such as expenditures from her allotted portion at his request and on his behalf; the mode of living of the parties, as compared with that enjoyed by the respondent and his present wife before the settlement, and, in a word, any matters

indicative of the conclusion that his present wife is, in effect, his agent, depository or "alter ego" in regard to this sum, all would be material to the question of his ability to support his minor child by a former marriage.

The statute is remedial and equitable in nature, and has been generally construed so as to vest in the courts charged with its execution wide discretion in the accomplishment of its objectives. M____ v. W____, 352 Mass. 704, 708-711 (1967). Considerable latitude of inquiry is necessary where fraudulent conduct is under consideration. The trial judge is in a far better position to determine its scope, and, absent a clear showing of an abuse of discretion, his setting of the boundaries of judicial inquiry will be accorded due deference.

In accordance with this opinion, the cause is remanded to the trial court for the purpose of (1) setting forth separately and fully his subsidiary findings of fact consistent with the tenor of the opinion, (2) reopening the proceedings for further evidentiary hearing, if he deems it necessary or helpful in order to expand upon his findings of fact, and (3) alternatively the settlement of a revised report, in the manner prescribed by Dist./Mun. Cts. R. Civ. P. 64, in which both the appellant and the court concur. See, **Santosuosso v. DellaRusso**, 300 Mass. 247, 249-250 (1938), or the disallowance of the draft report submitted by the appellant with an appropriate certificate of the judge stating his reasons therefor. Dist./Mun. Cts. R. Civ. P. 64(C)(5).